United States Bankruptcy Court
Southern District of Texas
**ENTERED**
May 21, 2026
Nathan Ochsner, Clerk

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Case No. 25-34507 |
| | § | |
| ROSSLYN2016 LLC, *et al.*, | § | Chapter 7 |
| | § | |
| Debtors.[1] | § | (Jointly Administered) |
| | § | |

**ORDER (I) AUTHORIZING AND APPROVING SETTLEMENT AGREEMENT, AND (II) GRANTING RELATED RELIEF Resolving ECF No. 171**

On this day came on to be heard the Chapter 7 Trustee's Motion (the "**Motion**")[2] for entry of an order, pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") (a) authorizing and approving entry into that certain Settlement Agreement, dated as of February 24, 2026, by and between the Chapter 7 Trustee, Morgan Stanley Private Bank, National Association, and TL-I, LLC, attached hereto as **Exhibit A** (the "**Settlement Agreement**"), (b) approving the Chapter 7 Trustee's performance of her obligations under the Settlement Agreement, and (c) approving and effectuating the releases provided by the Estate Releasing Parties as and to the full extent set forth in **Section 4** of the Settlement Agreement, effective as of the Settlement Effective Date; and upon consideration of the Motion and all related pleadings, and the argument of the parties and the evidence adduced at the hearing on the Motion, if any (the "Hearing"); and due and sufficient notice of the Motion and the Hearing having been

[1] The Debtors in these Chapter 11 cases (collectively, the "Debtors"), together with the last four digits of each of the Debtors' federal tax identification numbers, are: Texas Esencia 2019 LLC (6173); Rosslyn2016 LLC (8187); and Timber2020 LLC (8914). The Debtors' service address is 8600 Woodway Drive, Houston, Texas 77063.

[2] Capitalized terms used but not otherwise defined herein have the meaning ascribed to such terms in the Motion.

given under the circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Estates, their creditors, their stakeholders, and other parties in interest; and good cause appearing therefor; and based on the Court's findings of fact and conclusions of law announced on the record at the Hearing, which findings of fact and conclusions of law are incorporated herein by reference; it is hereby

**Found and Determined That:**[3]

A. **Jurisdiction and Venue**. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B. **Hearing and Notice**. As evidenced by the certificate of service previously filed with the Court, and based on the representations of counsel at the Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the Hearing, and approval of the Settlement Agreement has been provided in accordance with Section 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 9006, and the Local Rules of this Court, (ii) such notice was good, sufficient, and appropriate under the circumstances, and (iii) no other or further notice of the Motion, the Hearing, or the Settlement Agreement is or shall be required.

C. **Opportunity to Object**. A fair and reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities.

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

D. **Settlement and Compromise**. The Motion describes, and the Settlement Agreement contemplates, a comprehensive release and settlement of the Released Claims (the "**Compromise and Settlement**"), which release and settlement are supported by valuable consideration.

E. **Release**. The release of the Released Claims by the Estate Releasing Parties, as and to the fullest extent set forth in the Settlement Agreement (the "**Release**"), is critical to the settlements and compromises thereunder, is supported by fair and reasonable consideration, is in the best interests of the Estates, and, accordingly, is hereby approved pursuant to Bankruptcy Rule 9019; provided, however, that such Release is subject to the conditions, limitations, exclusions, and stipulations set forth in the Settlement Agreement in all respects, and shall be effective upon the Settlement Effective Date.

F. **Fair and Equitable/Best Interest**. Approval of the Compromise and Settlement is (i) fair and equitable, (ii) in the best interests of the Estates, and (iii) falls within the reasonable range of litigation possibilities. The balance between the likelihood of the Trustee's success on the merits after lengthy and costly litigation when compared to the concrete and tangible benefit of the Compromise and Settlement weighs in favor of approval of the Compromise and Settlement. Moreover, it is certain that litigation of the Released Claims would be costly, complex and protracted. The Trustee relied on experienced counsel when exercising her business judgment to enter into the Compromise and Settlement.

G. **Arm's-Length Process**. The negotiation and execution of the Settlement Agreement was at arm's length and in good faith, and at all times each of the Parties were represented by competent, independent counsel of their choosing.

H. **Legal and Factual Bases**. The legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein.

**It is therefore ORDERED, ADJUDGED AND DECREED THAT:**

1. The Motion is GRANTED as set forth herein.

2. The Compromise and Settlement, including the Settlement Agreement and all of its provisions (including the Release), are hereby approved, and the Release is incorporated fully herein. The Trustee is authorized to enter into, perform her obligations under, and take all other actions necessary to effectuate the Settlement Agreement pursuant to sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 6004 and 9019.

3. This Order, and the Settlement Agreement approved hereunder, shall be binding on all parties in interest in the Chapter 7 Cases (including, but not limited to, any subsequently appointed chapter 7 trustee or any other representative of the Debtors' estates) and in each case, on each of their predecessors or successors.

4. Effective as of the Settlement Effective Date, all Estate Releasing Parties, and any and all creditors and parties in interest in the Chapter 7 Cases, which have held or asserted, which hold or assert, or which in the future may hold or assert any Released Claims, directly or indirectly, against any of the Morgan Stanley Released Parties, shall be forever barred and enjoined from (a) asserting against any Morgan Stanley Released Parties, or (b) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against any Morgan Stanley Released Parties on account of or in connection with or with respect to, any Released Claim. Any of the Morgan Stanley Released Parties may enforce this Order as a defense to any claim or cause of action brought against such Morgan Stanley Released Party that is enjoined under the Settlement Agreement and this Order as to such Morgan Stanley Released Party, and may seek to enforce such injunction in a court of competent jurisdiction. The

Bankruptcy Court shall retain exclusive jurisdiction to hear and determine any dispute as to whether any claim asserted against any of the Morgan Stanley Released Parties constitutes a Released Claim.

5. For the avoidance of doubt and notwithstanding anything to the contrary in this Order or the Settlement Agreement, no creditor or other non-Debtor party shall be barred or enjoined from (a) asserting against any Morgan Stanley Released Party any claim, liability, obligation, defense, or cause of action that (i) is not property of any of the Debtors' estates or derivative of a claim or cause of action that is property of any of the Debtors' estates, (ii) is based on an independent legal duty owed by a Morgan Stanley Released Party to such creditor or other non-Debtor party, and (iii) may be asserted by such creditor or other non-Debtor party directly against any of the Morgan Stanley Released Parties under applicable non-bankruptcy law (each, a "**Direct Third Party Claim**"), or (b) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against any Morgan Stanley Released Party on account of or in connection with or with respect to any Direct Third Party Claim.

~~6. Prior to asserting any claims or causes of action, including by filing a lawsuit in state or federal court or otherwise, against the Morgan Stanley Released Parties related to the foreclosure of the Properties, any former, present, or future affiliates or insiders of the Debtors, including, without limitation, Kalkan, must first seek approval of the Bankruptcy Court by motion for leave to assert such claims or causes of action, with such motion for leave specifically establishing that such claims and/or causes of action constitute Direct Third Party Claim(s) and not Released Claims. Nothing herein, however, will limit any parties' ability to assert any defense to a claim by the Morgan Stanley Released Parties, including without seeking approval of the Bankruptcy Court, except to the extent such defense is barred by the Release.~~

7. The Morgan Stanley GUC Claims, as evidence by the Morgan Stanley Proofs of Claim, are hereby allowed as follows: Morgan Stanley has an allowed general unsecured claim (a) against the Rosslyn estate in the amount of $4,720,247.43 ; (b) against the Texas Esencia estate in the amount of $5,008,127.96; and (c) against the Timbers estate in the amount of $4,319,654.76. Other than the Morgan Stanley GUC Claims and claims (if any) to enforce, or for damages for breach of, the Settlement Agreement, Morgan Stanley shall not assert any other or greater claims against the Estates; *provided, however,* that, for the avoidance of any doubt, nothing herein or in the Settlement Agreement shall discharge, waive, release or limit, in any way, Morgan Stanley's rights, claims, and defenses as against Kalkan (including, without limitation, Morgan Stanley's rights under any personal guarantees executed by Kalkan in connection with the Loans), all such rights, claims and defenses being hereby expressly reserved.

8. Morgan Stanley stipulates and agrees that its legal, valid and properly perfected security interests and liens on the Collateral will, solely for purposes of distributions to holders of allowed unsecured claims in the Chapter 7 Cases, not encumber the Estates' right to any insurance recoveries with respect to the Properties; *provided, however*, that Morgan Stanley's rights with respect to Insurance Claims are fully reserved to the extent the Chapter 7 Cases are dismissed or the Trustee abandons or otherwise elects not to pursue the Insurance Claims; *provided, further,* that, to the extent the proceeds of any such insurance recoveries with respect to the Properties are distributed to unsecured creditors in the Chapter 7 Cases, Morgan Stanley shall be entitled to its *pro rata* share of such distributions on account of the Morgan Stanley GUC Claims. However, for avoidance of doubt, Insurance Claims will not include any insurance claims Morgan Stanley may have in relation to the Properties pursuant to any separate insurance policy Morgan Stanley may have thereon that are paid for directly by Morgan Stanley or an affiliate thereof, including any force placed policies.

8(a) To the extent Morgan Stanley, receives payment as loss payee on the account of any Insurance Claims, (excluding for the avoidance of doubt, Claims against any force placed insurance policy paid by Morgan Stanley or any affiliate thereof) Morgan Stanley agrees to promptly transfer to the Estates any such payments for distribution in accordance with Paragraph 8 of this Order.

9. The following adversary proceedings are hereby dismissed with prejudice and shall be administratively closed following entry of this Order:

| **Adversary No.** | **Case Style** |
|---|---|
| 25-03804 | *Rosslyn2016, LLC and Fercan Kalkan v. Morgan Stanley Private Bank* |
| 25-03805 | *Rosslyn2016, LLC and Fercan Kalkan v. Morgan Stanley Private Bank* |
| 25-03806 | *Texas Esencia 2019, LLC and Kalkan v. Morgan Stanley Private Bank* |
| 25-03807 | *Timbers2020, LLC and Fercan Kalkan v. Morgan Stanley Private Bank* |
| 25-03808 | *Rosslyn2016, LLC v. Morgan Stanley Private Bank and TL-I, LLC* |
| 25-03809 | *Timbers2020, LLC v. Morgan Stanley Private Bank and TL-I, LLC* |
| 25-03810 | *Texas Esencia 2019, LLC v. Morgan Stanley Private Bank and TL-I, LLC* |

10. For the avoidance of doubt, to the extent the automatic stay provisions of section 362 of the Bankruptcy Code would otherwise apply, such provisions are vacated and modified to effectuate all of the terms of the Settlement Agreement, including to permit the parties thereto to send any notices contemplated thereunder, or to exercise any right or perform any obligation in accordance with the terms thereof.

11. Any objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, including all reservations of rights included therein, are hereby overruled on the merits and denied with prejudice.

12. Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

13. The Trustee is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

14. This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

15. In the event of any conflict(s) or inconsistency between this Order and the Settlement Agreement, this Order shall govern.

**Signed: Wednesday, May 20, 2026**

Eduardo V. Rodriguez
Chief United States Bankruptcy Judge

# EXHIBIT A

# SETTLEMENT AGREEMENT

This **SETTLEMENT AGREEMENT** (this "Agreement") is made and entered into as of the 24th day of February, 2026 (the "Execution Date"), by and between the following parties (each, individually, a "Party" and, collectively, the "Parties"):

(a) Allison D. Byman, as the duly appointed chapter 7 trustee (the "Trustee") in the cases of Rosslyn2016, LLC ("Rosslyn"),[1] Texas Esencia 2019 LLC ("Texas Esencia"),[2] and Timbers2020 LLC ("Timbers" and, collectively with Rosslyn and Texas Esencia, the "Debtors" and each, a "Debtor"),[3] which cases are being jointly administered under *In re Rosslyn2016, LLC*, Case No. 25-34507 (EVR) (collectively, the "Chapter 7 Cases"), pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court");

(b) Morgan Stanley Private Bank, National Association ("Morgan Stanley"); and

(c) TL-I, LLC, a Delaware limited liability company ("TL-I").

## RECITALS

**WHEREAS**, Morgan Stanley made three separate loans (the "Loans" and each, a "Loan") to Rosslyn, Texas Esencia, and Timbers, evidenced by three substantially similar Term Loan Agreements (as amended, extended, or otherwise modified from time to time, the "Term Loan Agreements" and each, a "Term Loan Agreement") and three associated promissory notes (as amended, extended, or otherwise modified from time to time, the "Notes" and each, a "Note"), among other documents;

**WHEREAS**, to secure each Loan, the applicable Debtor granted Morgan Stanley legal and valid security interests and liens in and on substantially all of such Debtor's real, personal, and mixed property, including multi-family real estate apartment complexes formerly owned by each applicable Debtor and named to resemble its owner (the "Properties" and each, a "Property");[4]

**WHEREAS**, Morgan Stanley's security interests and liens encumbering the Properties and all related collateral (collectively, the "Collateral") is evidenced by, among other things, deeds of trust covering the Properties (as amended, extended, or otherwise modified from time to time, the "Deeds of Trust" and each, a "Deed of Trust," and, collectively with the Term Loan Agreements, Notes, and any and all other related documents, as amended, extended, or otherwise modified from time to time, the "Loan Documents") executed in connection with each Loan;

**WHEREAS,** on the Petition Date (as defined below), Fercan E. Kalkan, an individual ("Kalkan"), was the owner and managing member of each of the Debtors;

---

[1] *In re Rosslyn2016, LLC*, Case No. 25-34507 (EVR)

[2] *In re Texas Esencia 2019 LLC*, Case No. 25-34508 (EVR)

[3] *In re Timbers2020 LLC*, Case No. 25-34510 (EVR)

[4] True and correct legal descriptions for the Properties are attached hereto as **Exhibit A**

**WHEREAS**, as a result of the Debtors' continuing and uncured defaults and Events of Default (as defined in the Term Loan Agreements) under the Loan Documents, Morgan Stanley posted the Properties for a foreclosure sale to occur on February 4, 2025;

**WHEREAS**, on February 3, 2025, the Debtors and Kalkan collectively filed four (4) petitions (the "February Petitions") naming Morgan Stanley, among other defendants, thereby initiating four (4) separate lawsuits (the "February 2025 Lawsuits") in the District Courts of Harris County, Texas,[5] seeking, among other things, entry of temporary restraining orders to enjoin Morgan Stanley from foreclosing on the Properties;

**WHEREAS,** on March 31, 2025, each of the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), in the Bankruptcy Court, which chapter 11 cases were jointly administered under *In re Texas Esencia 2019 LLC*, Case No. 25-31816 (the "First Bankruptcy Cases");[6]

**WHEREAS,** on May 23, 2025, the Bankruptcy Court entered an order dismissing the First Bankruptcy Cases (the "Dismissal Order"), which, *inter alia*, dismissed the First Bankruptcy Cases with a bar to refiling for 180 days from the entry of the Dismissal Order and granted Morgan Stanley *in rem* relief as to the Properties pursuant to Section 362(d)(4) of the Bankruptcy Code;

**WHEREAS,** on June 30, 2025, the Debtors each filed a petition (the "June Petitions") naming Morgan Stanley as defendant, thereby initiating three (3) separate lawsuits (the "June 2025 Lawsuits" and, collectively with the February 2025 Lawsuits, the "Debtor Lawsuits") in the District Courts of Harris County, Texas,[7] seeking, among other things, entry of temporary restraining orders to enjoin Morgan Stanley from foreclosing on the Properties;

**WHEREAS,** on August 4, 2025 (the "Petition Date"), three (3) alleged creditors of the Debtors filed an involuntary petition for chapter 11 relief against the Debtors in the Bankruptcy Court;

**WHEREAS,** the Debtors did not oppose the involuntary petition, and an order for relief under chapter 11 of the Bankruptcy Code was entered by the Bankruptcy Court on September 22, 2025, thereby commencing chapter 11 cases that, pursuant to an order of the Bankruptcy Court entered on October 16, 2025, were jointly administered under *In re Rosslyn2016, LLC*, Case No. 25-34507 (the "Second Bankruptcy Cases");

---

[5] *Rosslyn2016, LLC and Fercan Kalkan v. Morgan Stanley Private Bank*, Cause No. 2025-07341; *Rosslyn2016, LLC and Fercan Kalkan v. Morgan Stanley Private Bank*, Cause No. 2025-07363; *Texas Esencia 2019, LLC and Fercan Kalkan v. Morgan Stanley Private Bank*, Cause No. 2025-07385; *Timbers2020, LLC and Fercan Kalkan v. Morgan Stanley Private Bank*, Cause No. 2025-07386.

[6] *In re Texas Esencia 2019 LLC,* Case No. 25-31816; *In re Rosslyn2016 LLC*, Case No. 25-31817; *In re Timbers2020 LLC*, Case No. 25-31818.

[7] *Rosslyn2016, LLC v. Morgan Stanley Private Bank and TL-I, LLC*, Cause No. 2025-44995; *Timbers2020, LLC. v. Morgan Stanley Private Bank and TL-I, LLC*, Cause No. 2025-44996; *Texas Esencia 2019, LLC v. Morgan Stanley Private Bank and TL-I, LLC*, Cause No. 2025-44997.

**WHEREAS,** on August 5, 2025, Morgan Stanley completed commercially reasonably foreclosure sales of the Properties;

**WHEREAS,** at such foreclosure sales, TL-I, a wholly-owned subsidiary of Morgan Stanley, purchased the Properties for the following credit bid purchase prices: $12,176,667.03 for the Property commonly known as The Retreat on Rosslyn Apartments; $14,000,000 for the Property commonly known as the La Esencia Apartments; and $11,000,000 for the Property commonly known as the Timbers of Cranbrook Apartments;

**WHEREAS,** on August 19, 2025, the Debtors and Kalkan filed amended petitions in the June 2025 Lawsuits adding (a) Kalkan as a co-plaintiff, and (b) TL-I and Robert R. Wisner, in his capacity as substitute trustee under the Deeds of Trust (the "Substitute Trustee") as co-defendants (in such capacity, collectively with Morgan Stanley, the "Defendants") and asserting claims for, among other things, wrongful foreclosure;

**WHEREAS,** on August 21, 2025, each of the Debtors and Kalkan filed lis pendens against the Properties in connection with the June 2025 Lawsuits (collectively, the "Lis Pendens");

**WHEREAS,** on October 8, 2025, Kalkan filed non-suits of his claims in the June 2025 Lawsuits;

**WHEREAS,** on November 3, 2025, Morgan Stanley timely filed notices of removal of the Debtor Lawsuits to the Bankruptcy Court, and on November 18, 2025, the Bankruptcy Court entered an order consolidating the Debtor Lawsuits under Adversary Proceeding No. 25-03804 (the "Consolidated Adversary Proceeding");

**WHEREAS,** on November 18, 2025, Morgan Stanley filed its *Motion to Expunge Lis Pendens* (Docket No. 4 in the Consolidated Adversary Proceeding) and *Motion for Judgment on the Pleadings* (Docket No. 5 in the Consolidated Adversary Proceeding) with respect to the Debtor Lawsuits;

**WHEREAS,** on December 9, 2025, the Debtors filed Second Amended Complaints (Docket Nos. 14, 15 and 16 in the Consolidated Adversary Proceeding, collectively, the "Second Amended Complaints") which purport to amend the June Petitions;

**WHEREAS,** on December 16, 2025, Morgan Stanley filed its *Motion to Strike the Second Amended Complaints* (Docket No. 21 in the Consolidated Adversary Proceeding);

**WHEREAS,** on January 8, 2026, the Bankruptcy Court entered an order converting the Second Bankruptcy Cases to cases under chapter 7 of the Bankruptcy Code (Docket No. 137 in the Chapter 7 Cases);

**WHEREAS,** on January 8, 2026, the Bankruptcy Court entered an order abating the Consolidated Adversary Proceeding (Docket No. 32 in the Consolidated Adversary Proceeding);

**WHEREAS,** on January 9, 2026, the United States Trustee for Region 7 Southern and Western Districts of Texas duly appointed the Trustee in the Chapter 7 Cases;

**WHEREAS,** on January 20, 2026, Kalkan, acting *pro se*, filed a petition naming Morgan Stanley Mortgage Capital Holdings LLC ("MSMCH") and TL-I as defendants, thereby initiating a lawsuit (the "January 2026 Lawsuit" and, collectively with the Debtor Lawsuits, the "Lawsuits") in the 164th District Court of Harris County, Texas,[8] asserting claims for, among other things, wrongful foreclosure;

**WHEREAS**, the Trustee asserts that the claims asserted in the January 2026 Lawsuit are derivative claims and causes of action that constitute property of the Estates (as hereinafter defined below);

**WHEREAS,** on February 13, 2026, MSMCH timely filed a notice of removal of the January 2026 Lawsuit to the Bankruptcy Court;

WHEREAS, on February 17, 2026, Kalkan filed a notice of voluntary dismissal of the January 2026 Lawsuit without prejudice;

**WHEREAS,** Morgan Stanley and TL-I deny all charges of wrongdoing or liability against them arising out of or in any way related to any of the conduct, statements, acts or omissions alleged, or that could be alleged, in connection with the Lawsuits;

**WHEREAS,** Morgan Stanley and TL-I believe they (as well as MSMCH) have meritorious defenses to the claims asserted in the Lawsuits, and Morgan Stanley has also asserted various affirmative claims against the Debtors including, without limitation, (a) prepetition unsecured claims, in the aggregate amount of $14,692,699.48 (the "Morgan Stanley GUC Claims"),[9] and (b) claims to and against the proceeds of insurance related to the Properties (the "Insurance Claims" and, together with the Morgan Stanley GUC Claims and all other claims for payment Morgan Stanley could assert against the Debtors and the Debtors' Estates, collectively, the "Morgan Stanley Claims");

**WHEREAS**, the Trustee, as the duly appointed chapter 7 trustee for the Debtors and each of the Debtors' respective bankruptcy estates (each, an "Estate" and, collectively, the "Estates"), and her counsel have reviewed the claims that are or could have been asserted in the Lawsuits, as well as the Morgan Stanley Claims;

**WHEREAS**, in order to avoid the substantial costs, risks, and uncertainties of litigation, and the resulting delay of the resolution of the Chapter 7 Cases and distributions to creditors, the Parties to this Agreement desire to fully and finally resolve any potential or actual claims or disputes related to the Lawsuits as set forth herein;

**WHEREAS**, the Parties have agreed to seek approval, implementation, and administration of this Agreement in the Chapter 7 Cases by, among other things, filing a motion

---

[8] *Dr. Fercan Kalkan v. Morgan Stanley Mortgage Capital Holdings LLC and TL-I, LLC*, Cause No. 2026-03837.

[9] The Morgan Stanley GUC Claims consist of the following: (i) claim against Rosslyn in the amount of $4,939,127.13; (ii) claim against Texas Esencia in the amount of $5,219,734.20; and (iii) claim against Timber in the amount of $4,533,838.15.

to approve this Agreement pursuant to Rule 9019 (the "9019 Motion") of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and

**WHEREAS**, the Parties (i) have conducted, and this Agreement is the product of good faith, arm's-length negotiations regarding a comprehensive settlement of the Estate Claims (as hereinafter defined), and (ii) acknowledge that each Party will receive substantial value and benefit if the settlement contained herein is consummated.

**AGREEMENT**

**NOW, THEREFORE**, in consideration of the promises, releases, covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Party, intending to be legally bound, agrees as follows:

**Section 1. Incorporation of Recitals.**

The Parties acknowledge and agree that the Recitals set forth above are true and accurate, and incorporate the Recitals into this Agreement as if fully set forth herein.

**Section 2. Court Approval; Conditions to Effectiveness.**

This Agreement is subject to approval by the Bankruptcy Court. Within three (3) days of final execution of this Agreement by all Parties, the Trustee shall file a motion, in form and substance reasonably acceptable to the Parties, requesting entry by the Bankruptcy Court of an order, substantially in the form attached hereto as **Exhibit B**, (a) approving this Agreement under Bankruptcy Rule 9019, (b) authorizing the Trustee to enter into and perform her obligations under this Agreement, and (c) granting related relief (the "Settlement Order"). If this Agreement is not approved by the Bankruptcy Court, this Agreement shall be terminated and of no further force or effect, and all Parties shall be released from any further obligations hereunder.

The effective date of this Agreement (the "Settlement Effective Date") shall be the first date upon which all of the following conditions have been satisfied: (a) each of the Parties has executed and delivered a signature page to this Agreement; (b) entry by the Bankruptcy Court of the Settlement Order in substantially the form of **Exhibit B** attached hereto, which Settlement Order shall contain an injunction provision substantially in the form of **Paragraph 4** of the Settlement Order attached as **Exhibit B** hereto; (c) such Settlement Order shall have become a Final Order (as hereinafter defined); and (d) the Settlement Payment (as hereinafter defined) shall have been delivered in accordance with **Section 3** of this Agreement. "Final Order" means an order or judgment of the Bankruptcy Court entered by the clerk of the Bankruptcy Court on the docket in the Chapter 7 Cases, which has not been modified, amended, reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari or motion for new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, either (i) no stay of such order or judgment shall be in effect, (ii) no motion or application for a stay of such order or judgment shall be filed and pending or such motion or application shall have been denied, or (iii) if a stay of such order or judgment has been granted, then (x) the stay shall have been dissolved or such order or judgment

of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired, as a result of which such order shall have become final in accordance with Bankruptcy Rule 8002; *provided, however* that the possibility of a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Bankruptcy Procedure, being filed that relates to such order, shall not cause such order not to be a Final Order. The Parties may jointly waive any one or more of the conditions to effectiveness contained herein.

**Section 3. Settlement Payment.**

For and in consideration of the releases contained herein, and other good and valuable consideration provided by this Agreement, within five (5) business days of the date on which the Settlement Order shall have become a Final Order, Morgan Stanley shall pay to the Trustee a settlement payment in the total amount of One Hundred and Fifty Thousand United States Dollars and 00/100 Cents ($150,000.00) (the "Settlement Payment") in immediately available funds. The Settlement Payment shall be allocated equally (i.e., $50,000 each) to each Debtor's Estate.

**Section 4. Release of Estate Claims and Causes of Action.**

For and in consideration of the Settlement Payment and other good and valuable consideration provided by this Agreement, effective upon the Settlement Effective Date, the Trustee, on behalf of herself, each Debtor, each Debtor's Estate, and any other person or entity who asserts or may purport to assert any claim or cause of action derivatively, on behalf of, under, or through any of them (collectively, the "Estate Releasing Parties"), does hereby fully and forever release, discharge and acquit (a) Morgan Stanley; (b) TL-I; (c) all past and present affiliates (as defined in the Bankruptcy Code) of Morgan Stanley and TL-I, including without limitation MSMCH, all of whom are intended to be third party beneficiaries of this Agreement; (d) each of the foregoing's respective current and former parents, subsidiaries, partners, agents, officers, directors, managers, employees, representatives, attorneys, successors and predecessors, and (e) the Substitute Trustee (collectively, the "Morgan Stanley Released Parties") from any and all claims or causes of action (or potential claims or causes of action), including without limitation, (i) all claims asserted or that could have been asserted in the Lawsuits (the "Litigation Claims"), (ii) any and all claims and causes of action arising under Chapter 5 of the Bankruptcy Code that could be asserted by or on behalf of any of the Debtors or their respective Estates (collectively, the "Avoidance Actions"), (iii) any and all derivative claims and causes of action that could be asserted by or on behalf of any of the Debtors or their respective Estates (the "Derivative Claims"), and (iv) any and all other existing and potential claims and causes of action, actions, complaints, controversies, demands, grievances, defenses, obligations or liabilities of any nature whatsoever, whether presently known or unknown, suspected or unsuspected, whether concealed or hidden, against any of the Morgan Stanley Released Parties that could be asserted by or on behalf of any of the Debtors or their respective Estates (collectively, the "Other Estate Causes of Action" and, together with the Litigation Claims, Avoidance Actions and Derivative Claims, collectively, the "Estate Claims") that the Estate Releasing Parties ever had, now have or may hereafter have against the Morgan Stanley Released Parties for, upon or by reason of any matter, cause or thing whatsoever, from the beginning of the world through the Settlement Effective Date (the foregoing, collectively, the "Released Claims" and each a "Released Claim"); *provided that* the Estate

Releasing Parties do not release, discharge or acquit the Morgan Stanley Released Parties from any claim to enforce, or for damages for breach of, this Agreement. For the avoidance of doubt, nothing in this Release shall be construed as a release of the Insurance Claims or impair the Trustee's rights and interests in, and standing to pursue, the Insurance Claims.

**Section 5. Settlement Bar.**

The Trustee, on behalf of herself, each Debtor, and each Debtor's Estate, agrees not to assert any Released Claim against any of the Morgan Stanley Released Parties in any jurisdiction. On and after the Settlement Effective Date, all Estate Releasing Parties shall be forever barred and enjoined from (a) asserting against any Morgan Stanley Released Parties, or (b) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against any Morgan Stanley Released Parties on account of or in connection with or with respect to any Released Claim covered by the release contained in **Section 4** of this Agreement.

The Parties acknowledge and agree that this Agreement is intended to discharge the Morgan Stanley Released Parties from all liability to any other person for contribution or indemnity that arises from, relates to, is in any way based upon, or is in any way connected with the Estate Claims released in **Section 4** hereof, to the fullest extent authorized under applicable law.

For the avoidance of doubt, the Estate Claims shall be fully and finally resolved by this Agreement without regard to whether the Estate Claims have been or ever will be: (a) asserted; (b) plead; and/or (c) otherwise judicially determined to belong to the Debtors' Estates, and the Parties reserve all rights to seek summary dismissal of the Estate Claims consistent with and to the extent necessary to effectuate the terms of this Agreement.

**Section 6. Dismissal of Debtor Lawsuits and Lis Pendens; Enforcement of Settlement Bar as to January 2026 Lawsuit**

Within five (5) business days of delivery of the Settlement Payment, (a) the Trustee shall release, dismiss, or otherwise cancel, the Lis Pendens, and (b) the Parties will cooperate to obtain, as soon as reasonably practicable, entry by the Bankruptcy Court of an order dismissing the Debtor Lawsuits with prejudice.

~~The Parties will further cooperate to obtain, as soon as reasonably practicable, entry by the Bankruptcy Court of an order (a) finding that the claims asserted in the January 2026 Lawsuit constitute Derivative Claims subject to this Agreement, and (b) enforcing this Agreement to bar further prosecution of the claims asserted by Kalkan in the January 2026 Lawsuit, and, if necessary, to bar any similar lawsuits filed by Kalkan or any third party asserting Derivative Claims against the Morgan Stanley Released Parties arising from or related to the same common nucleus of facts at issue in the Debtor Lawsuits.~~

**Section 7. Allowance and Treatment of Morgan Stanley Claims**

Upon the Settlement Effective Date, subject to the terms and conditions set forth herein:

(a) The Trustee stipulates and agrees to the allowance of the Morgan Stanley GUC Claims. The Morgan Stanley GUC Claims, as evidenced by (i) Proof of Claim No. [9] filed in the Rosslyn case, (ii) Proof of Claim No. [10] filed in the Texas Esencia case, and (iii) Proof of Claim No. [6] filed in the Timbers case (the foregoing, collectively, the "Morgan Stanley Proofs of Claim"), shall each be allowed in the applicable Chapter 7 Cases pursuant to the Settlement Order.

(b) Morgan Stanley stipulates and agrees that its legal, valid and properly perfected security interests and liens on the Collateral will, solely for purposes of distributions to holders of allowed unsecured claims in the Chapter 7 Cases, not encumber the Estates' right to any insurance recoveries with respect to the Properties; *provided, however*, that Morgan Stanley's rights with respect to Insurance Claims are fully reserved to the extent the Chapter 7 Cases are dismissed or the Trustee abandons or otherwise elects not to pursue the Insurance Claims; *provided, further,* that, to the extent the proceeds of any such insurance recoveries with respect to the Properties are distributed to unsecured creditors in the Chapter 7 Cases, Morgan Stanley shall be entitled to its *pro rata* share of such distributions on account of the Morgan Stanley GUC Claims.

(c) The Trustee, in the course of her administration of the Debtors' Estates and in her reasonable business judgment, will, for the benefit of holders of allowed unsecured claims, including Morgan Stanley:

(i) seek the Bankruptcy Court's approval to retain professionals necessary to administer the Chapter 7 Cases including, without limitation, to pursue the Insurance Claims;

(ii) investigate and pursue the Insurance Claims; and

(iii) investigate and pursue the Estates' claims and causes of action against other parties including, without limitation, Kalkan and Texas Excel;

**Section 8. Further Assurances.**

(a) Each Party agrees to use its reasonable best efforts to take or cause to be taken all actions and to do or cause to be done all things necessary, proper or advisable under applicable laws and regulations to implement and make effective the settlement transactions contemplated by this Agreement. In that regard, each of the Parties agrees that he, she or it shall: (a) seek and support the Bankruptcy Court's entry of the Settlement Order; and (b) cooperate in the execution of any documents necessary to ensure timely consummation and execution of the provisions of this Agreement.

(b) The Parties further agree to take whatever steps may be required to ensure the enforceability of this Agreement and the Parties' respective rights and obligations hereunder in any and all relevant jurisdictions.

**Section 9. Ownership of Released Claims.**

The Trustee represents and warrants that: (a) the Trustee is the holder of the Estate Claims against the Morgan Stanley Released Parties that are being released hereunder; and (b) the Trustee has not sold, assigned, transferred or otherwise conveyed any such Estate Claims.

**Section 10. Representations and Warranties of the Parties.**

To induce each other Party to enter into and perform its obligations under this Agreement, each Party, severally but not jointly, represents, warrants and acknowledges, as of the date hereof and as of the Settlement Effective Date, as follows:

(a) Authority. (i) Each entity is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and has all the requisite corporate, partnership, limited liability company or other power and authority to execute and deliver this Agreement and perform its obligations under this Agreement, and (ii) the execution, delivery and performance by each person or entity under this Agreement and the other documents and instruments contemplated hereby to which it is contemplated to be a party and the consummation of the transactions contemplated herein and therein, have been duly authorized by all necessary actions on its part, and no other actions or proceedings on its part are necessary to authorize and approve this Agreement.

(b) Validity. This Agreement has been duly executed and delivered by it and constitutes its legal, valid and binding agreement, enforceable against it in accordance with its terms.

(c) No Conflict. The execution, delivery and performance (when such performance is due) of this Agreement by each Party does not and shall not (i) violate any provision of law, rule or regulation applicable to it or any of its subsidiaries or its or their subsidiaries' certificates of incorporation or bylaws or other organizational documents, or (ii) conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any material contractual obligations to which it or any of its subsidiaries is a party.

(d) Authorization of Governmental Authorities. No action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority or regulatory body is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by it of this Agreement.

(e) No Reliance. It (i) is a sophisticated party with respect to the matters that are the subject of this Agreement, (ii) has been represented and advised by legal counsel in connection with this Agreement, (iii) has adequate information concerning the matters that are the subject of this Agreement, and (iv) has independently and without reliance upon any other Party, or any of its affiliates, or any officer, employee, agent or representative thereof, and based on such information as it has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that it has relied upon each other Party's express representations, warranties and covenants in this Agreement, which it enters, or as to which it acknowledges and agrees, voluntarily and of its own choice and not under coercion or duress.

**Section 11. Fair and Reasonable.**

The Parties acknowledge and agree that this Agreement is the product of arms' length negotiations, and that it is fair, reasonable, adequate, entered into in good faith, and in the best interest of each of the Parties.

**Section 12. Miscellaneous.**

(a) Entire Agreement. This Agreement constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes and nullifies all prior agreements, oral or written, among the Parties with respect thereto. The Parties each specifically warrant that this Agreement is executed without reliance upon any statement or representation by any other Party hereto, except as expressly set forth herein.

(b) Binding Agreement. This Agreement shall be binding on the Parties as of the Settlement Effective Date.

(c) Governing Law; Jurisdiction; Waiver of Jury Trial. This Agreement shall be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of Texas (or, as applicable, the Bankruptcy Code and the Bankruptcy Rules), without giving effect to the conflict of laws principles thereof. Each Party agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this Agreement in the Bankruptcy Court and, solely in connection with claims arising under this Agreement: (i) irrevocably submits to the exclusive jurisdiction and the authority of the Bankruptcy Court, (ii) waives any objection to laying venue in any such action or proceeding in the Bankruptcy Court, and (iii) waives any objection that the Bankruptcy Court is an inconvenient forum, does not have jurisdiction over any party, or lacks the constitutional authority to enter final orders in connection with such action or proceeding. Each Party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding arising out of, or relating to, this Agreement or the transactions contemplated hereby (whether based on contract, tort or any other theory). Each Party (i) certifies that no representative, agent or attorney of any other Party has represented, expressly or otherwise, that such other Party would not, in the event of litigation, seek to enforce the foregoing waiver, and (ii) acknowledges that it and the other Parties have been induced to enter into this Agreement by, among other things, the mutual waivers and certifications in this **Section 12(c).** It is understood and agreed that money damages may not be a sufficient remedy for any breach or threatened breach of this Agreement and that each Party shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy for any such breach or threatened breach by the other to the extent permitted by law.

(d) Interpretation and Rules of Construction. This Agreement is the product of negotiations among the Parties and in the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Agreement, or any portion hereof, shall not be effective in regard to the interpretation hereof. The Parties were each represented by counsel during the negotiations and drafting of this Agreement and continue to be represented by counsel. In addition, this Agreement shall be interpreted in accordance with section 102 of the Bankruptcy Code.

(e) Section Headings. The headings contained in this Agreement are for convenience and reference purposes only and do not form a part of the Agreement and in no way modify, interpret or construe the agreements and understanding of the Parties contained herein.

(f) Settlement Discussions. This Agreement and the transactions contemplated herein are part of a proposed settlement among the Parties. Nothing herein shall be deemed an admission of any kind. To the extent provided by Federal Rule of Evidence 408, and any applicable state or federal rules of evidence, all negotiations relating to this Agreement shall not be admissible into evidence in any proceeding other than proceedings to approve the Settlement Order or to enforce the terms of this Agreement.

(g) Waiver. Any waiver (express or implied) by any Party of any provision of this Agreement shall not operate as or be construed to be a waiver of any breach of that provision or of any breach of any other provision of this Agreement. The failure of a Party to insist upon strict adherence to any term of this Agreement on one or more occasions will not be considered a waiver or deprive that Party of the right thereafter to insist upon strict adherence to that term or any other term of this Agreement. Any waiver must be in writing.

(h) Severability. If a court of competent jurisdiction holds that any provision of this Agreement is invalid, illegal, or unenforceable, the balance of this Agreement shall remain in effect, and if a court of competent jurisdiction holds that any provision is inapplicable to any Party or circumstance, it shall nevertheless remain applicable to all other Parties and circumstances.

(i) Successors and Assigns; No Third Party Beneficiaries. This Agreement is intended to bind and inure to the benefit of the Parties and their affiliates, successors and permitted assigns, as applicable. Except as otherwise explicitly set forth herein, nothing in this Agreement is intended to benefit or create any right or cause of action in or on behalf of any person other than the Parties (and their affiliated persons and entities who are expressly described as beneficiaries of the releases and settlements set forth herein).

(j) Notices. All notices hereunder shall be deemed given if in writing and delivered, if sent by electronic mail, courier, or registered or certified mail (return receipt requested) to the following addresses (or at such other addresses as shall be specified by like notice):

if to the Trustee, to:

Allison D. Byman<br>
Byman & Associates PLLC<br>
7924 Broadway, Suite 104<br>
Pearland, TX 77581

with copies (which shall not constitute notice) to:

Aaron J. Power<br>
1000 Main Street, 36th Floor<br>
Houston, Texas 77002<br>
(713) 226-6000 (telephone)<br>
(713) 228-1331 (fax)

if to Morgan Stanley and TL-I, to:

Morgan Stanley Private Bank, National Association
2000 Westchester Avenue, 1st Floor
Purchase, NY 10577
Attn: Emily Pereless

with copies (which shall not constitute notice) to:

Matthew T. Ferris
Haynes and Boone, LLP
2801 N. Harwood Street, Suite 2300
Dallas, Texas 75201
(214) 651-5000 (telephone)
(214) 651-0393 (fax

or such other address as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above. Any notice given by delivery, mail, or courier shall be effective when received.

(k) Costs and Expenses. Each Party shall bear its own costs, expenses, and attorneys' fees in connection with the negotiation and execution of this Agreement.

(l) No Admissions. The execution of this Agreement by the Parties shall not be deemed as an admission of liability by any of them with respect to any matter whatsoever, whether raised in the Chapter 7 Cases or otherwise.

(m) Amendments. This Agreement may not be altered, modified or amended in any way except by a writing duly executed by all of the Parties hereto and approved by the Bankruptcy Court.

(n) Execution of Agreement. This Agreement may be executed and delivered in any number of counterparts and by way of electronic signature and delivery, each such counterpart, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same agreement. Each individual executing this Agreement on behalf of a Party has been duly authorized and empowered to execute and deliver this Agreement on behalf of such Party.

[Signature Pages Follow]

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the date first written above.

Allison D. Byman, as Chapter 7 Trustee

By:________________________________________
Allison D. Byman

Morgan Stanley Private Bank, National Association

By:________________________________________
Name:
Title:

TL-I, LLC

By:________________________________________
Name:
Title:

EXHIBIT A

Legal Descriptions

**TEXAS ESENCIA PROPERTY:**

Description of an 8.456 acre (368,364 square foot) tract of land being all of NORTH VISTA APARTMENTS according to the map or plat thereof recorded in Volume 316, Page 72 of the Harris County Map Records, located in the Manuel Tarin Survey, Abstract 778, Harris County, Texas, said 8.456 acre tract of land being more particularly described as follows (with bearings referenced to said plat of NORTH VISTA APARTMENTS):

BEGINNING at a 5/8-inch iron rod found on the southerly right-of-way line of North Vista Drive (100 feet wide per Volume 298, Page 64 of the Harris County Map Records) for the most northerly northwest corner of Unrestricted Reserve "D", NORTH VIEW SUBDIVISION SECTION ONE as recorded in Volume 298, Page 64 of the Harris County Map Records and northeast corner of the herein described tract;

THENCE, South 08° 09' 00" East, departing the southerly right-of-way line of said North Vista Drive along a westerly line of said Reserve "D", a distance of 318.17 feet to a 5/8-inch iron rod found for the most easterly southeast corner of the herein described tract;

THENCE, South 88° 44' 24" West, along a northerly line of said Reserve "D", a distance of 100.00 feet to a 5/8-inch iron rod found for a southerly northwest corner of said Reserve "D" and an interior corner of the herein described tract;

THENCE, South 01° 15' 36" East, along a westerly line of said Reserve "D", a distance of 200.00 feet to a 5/8-inch iron rod found in the northerly line of Restricted Reserve "C" of Richey Road Apartments as recorded in Film Code Number 623045 of the Harris County Map Records for the southwest corner of said Reserve "D" and the most southerly southeast corner of the herein described tract;

THENCE, South 88° 44' 24" West, along the northerly line of said Reserve "C", a distance of 670.77 feet to a 5/8-inch iron rod found for the southeast comer of the called 1.0000 acre tract described in a Deed to AVTA Investments, recorded in Harris County Clerk file No. W763253, the southeast corner of Lexington Motor Inn North as recorded in Volume 316, page 150 of the Harris County Map Records and the southwest corner of the herein described tract;

THENCE, North 08° 08' 10" West, along the easterly line of said called 1.0000 acre tract, a distance of 464.53 feet to a 5/8-inch iron rod found on the southerly right-of-way line of the aforementioned North Vista Drive for the northeast corner of said called 1.0000 acre tract and the northwest corner of the herein described tract;

THENCE, North 81° 51' 50" East, along the southerly right-of-way line of said North Vista Drive, a distance of 65.63 feet to a 5/8-inch iron rod found for the point of curvature of a curve to the right;

THENCE, northeasterly, continuing along said southerly right-of-way line of North Vista Drive, and the arc of said curve to the right having a radius of 1,950.00 feet, through a central angle of 03° 27' 05", (the chord bears North 83° 35' 23" East, a distance of 117.45 feet) an arc distance of 117.46 feet to a 5/ 8-inch iron rod found for the point of tangency;

THENCE, N 85° 18' 55" E, continuing along the southerly right-of-way line of said North Vista Drive, a distance of 607.17 feet to the POINT OF BEGINNING and containing a computed area of 8.456 acres (368,364) of land.

**TIMBERS PROPERTY:**

All that certain 9.5000 acres of land, more or less, being all of TIMBERS OF CRANBROOK, according to the map or plat recorded in Volume 318, Page 104 of the Map Records of Harris County, Texas, said 9.5000 acre tract being more particularly described by metes and bounds as follows:

BEGINNING at a found 5/8-inch iron rod marking the most southerly corner of said Timbers of Cranbrook, and being on the northeast right-of-way line of Ella Boulevard (100 feet wide);

THENCE North 45° 55' 07" West, a distance of 871.05 feet, with the said northeast right-of-way, to a found 5/8-inch iron rod for corner, and being a point on a curve to the right, having a central angle of 44° 09' 40", a radius of 100.00 feet, a chord angle of North 66° 09' 50" East, a chord distance of 75.18 feet;

THENCE with said curve to the right and with the north line of said Timbers of Cranbrook, an arc distance of 77.08 feet to a found 5/8-inch iron rod for the point of tangency;

THENCE North 88° 14' 29" East, a distance of 949.80 feet, continuing with said north line, to a found 5/8-inch iron rod for the point of curvature of a curve to the right, having a central angle of 44° 52' 18", a radius of 100.00 feet, a chord bearing of South 69° 19' 24" East, and a chord distance of 76.33 feet;

THENCE with the said curve to the right, continuing with said north line, for a arc distance of 78.32 feet to a found 5/8-inch iron rod marking the point of tangency;

THENCE South 46° 53' 15" East, a distance of 111.06 feet, continuing with the said north line, to a found 5/8-inch iron rod marking the northeast corner of said Timbers of Cranbrook;

THENCE South 44° 04' 53" West, a distance of 783.25 feet, with the southeast line of said Timbers of Cranbrook, to the POINT OF BEGINNING and containing 9.5000 acres (413,819 square feet) of land, more or less.

**ROSSLYN PROPERTY:**

TRACT 1:

DESCRIPTION OF 11.4500 ACRES OF LAND (198.763 SQUARE FEET) BEING ALL OF SECTION ONE OF NORTHWEST PINES APARTMENTS, A SUBDIVISION OF RECORD IN VOLUME 261, PAGE 41, OF THE HARRIS COUNTY MAP RECORDS (H.C.M.R.) AND ALL OF THE PARTIAL REPLAT OF NORTHWEST PINES APARTMENTS, A SUBDIVISION OF RECORD IN VOLUME 283. PAGE 11 H.C.M.R., LOCATED IN THE A.G. HOLLAND SURVEY, ABSTRACT NO. 346 AND THE JAMES YOUNG SURVEY, ABSTRACT NO 944, HOUSTON, HARRI S COUNTY , TEXAS; SAID 11.4500 ACRES BEING MORE FULLY DESCRIBED BY METES ANO BOUNDS AS FOLLOWS: (BEARINGS ARE REFERENCED TO SAID PLAT OF NORTHWEST PINES APARTMENTS ) BEGINNING AT A 5/8-INCH IRON ROD WITH PLASTIC CAP STAMPED "TERRA SURVEYING" SET IN THE SOUTHWESTERLY RIGHT-OF-WAY LINE OF NORTH HOUSTON-ROSSLYN ROAD (60 FEET WIDE) MARKING THE NORTHEAST CORNER OF SAID PARTIAL REPLAT OF NORTHWEST PINES APARTMENTS;

THENCE SOUTH 37°18'38" EAST , ALONG THE SOUTHWEST IGHT-OF-WAYLINE OF SAID NORTH HOUSTON-ROSSLYN ROAD, A DISTANCE OF 159.64 FEET TO A 5/8-INCHIRON ROD FOUND FOR THE BEGINNING OF A CURVE TO THE RIGHT;

THENCE, SOUTHEASTERLY, CONTINUING ALONG SAID RIGHT-OF-WAY LINE OF NORTH HOUSTON-ROSSLYN ROAD AND THE ARC OF SAID CURVE TO THE RIGHT, AT A DISTANCE OF 218.00 FEET PASSING THE COMMON EAST CORNER OF THE AFORESAID SECTION ONE OF NORTHWEST PINES APARTMENTS, AND THE PARTIAL REPLAT OF NORTHWEST PINES APARTMENTS , CONTINU ING ALONG SAID CURVE TO THE RIGHT A TOTAL ARC DISTANCE OF 614.65 FEET, HAVING A RADIUS OF 1,598.63 FEET, A CENTRAL ANGLE OF 22°1'46" AND A CHORD WHICH BEARS SOUTH 26°17'45" EAST, 610.87 FEET TO A 5/8-INCHIRON ROD FOUND FOR CORNER IN THE WEST RIGHT-OF-WAY LINE OF ANTOINE DRIVE (114 FEET WIDE);

THENCE, SOUTH 00°20'48" EAST ALONG THE WEST RIGHT-OF-WAY LINE OF SAID ANTOINE DRIVE, A DISTANCE OF 140.00 FEET TO A 5/8-INCHIRON ROD WITH PLASTIC CAP STAMPED "TERRA SURVEYING' SET FOR THE COMMON SOUTHEAST CORNER OF SAID NORTHWEST PINES APARTMENTS AND THE NORTHEAST CORNER OF A CALLED 4.4490 ACRE TRACT AS RECORDED UNDER HARRIS COUNTY CLERK ' S FILE NUMBER N441935;

THENCE, SOUTH 89°39'12 " WEST , ALONG THE COMMON SOUTH LINE OF SAID NORTHWEST PINES APARTMENTS AND THE NORTH LINE OF THE SAID 4.4-490 ACRE TRACT, A DISTANCE OF 254.00 FEET TO A 5/8-INCH IRON ROD FOUND FOR THE BEGINNING OF A NON-TANGENT CURVE TO THE RIGHT·

THENCE, NORTHWESTERLY, CONTINUING ALONG SAID COMMON LINE AND ALONG THE ARC OF SAID CURVE TO THE RIGHT, AN ARC DISTANCE OF 60.1 2 FEET, HAVING A RADIUS OF 92.61 FEET A CENTRAL ANGLE OF 37°11'42" AND A CHORD

WHICH BEARS NORTH 71°44'57" WEST, 59.07 FEET, TO A 5/8-INCHIRON ROD WITH A PLASTIC CAP STAMPED "TERRA SURVEYING" SET FOR THE END OF SA'ID CURVE, FROM WHICH A FOUND 5/8- INCH IRON ROD BEARS NORTH 70°24' WEST, 0.3 FEET;

THENCE, NORTH 82°01'19" WEST NON-TANGENT WITH THE PREVIOUSLY DESCRIBED CURVE AND CONTINUING ALONG SAID COMMON LINE, A DISTANCE OF 315.13 FEET TO A 5/8-INCH IRON ROD FOUN.D IN THE ARC OF A CURVE TO THE LEFT IN THE EAST LINE OF A CALLED 15.9359 ACRE TRACT CONVEYED TO BIGELOW TEXAS CORPORATION AS RECORDED UNDER HARRIS COUNTY CLERK'S FILE NUMBER P353480, COMMON WITH THE EAST LINE OF THOUSAND OAKS APARTMENT VILLAGES SECTION ONE, A SUBDIVISION OF RECORD IN VOLUME 172, PAGE 62 H.C.M.R. AND MARKING THE COMMON NORTHWEST CORNER OF THE SAID 4.4490 ACRE TRACT AND THE SOUTHWEST CORNER OF SAID NORTHWEST PINES APARTMENTS ;

THENCE NORTHWESTERLY NON-TANGENT WITH THE PREVIOUSLY DESCRIBED LINE AND ALONG THE COMMON EAST LINE OF SAID 15.9359 ACRE TRACT AND SAID THOUSAND OAKS APARTMENT VILLAGES SECTION ONE AND THE WEST LINE OF SAID NORTHWEST PINES APARTMENTS AND ALONG THE ARC OF SAID CURVE TO THE LEFT, AN ARC DISTANCE OF 164.99 FEET (CALL ED 165.00 FEET), HAVING A RADIUS OF 1, 598.63FEET, A CENTRAL ANGLE OF 05"54'48" (CALLED 05"54'49") AND A CHORD WHICH BEARS NORTH 15°27'11" WEST, 164.92 FEET, TO A 5/8-INCHIRON ROD FOUND FOR THE END OF SAID CURVE AND THE BEGINNING OF A NON-TANGENT CURVE TO THE LEFT;

THENCE, NORTHWESTERL,YCONTINU ING ALONG SAID COMMON LINE AND ALONG THE ARC OF SAID CURVE TO THE LEFT AT A DISTANCE OF 131.59 FEET PASSING THE COMMON WEST CORNER OF THE AFORESA ID SECTION ONE OF NORTHWEST PINES APARTMENTS , AND THE PARTIAL REPLAT OF NORTHWEST PIN.ES APARTMENTS, CONTINUING FOR A TOTAL ARC DISTANCE OF 362.59 FEET, HAVING A RADIUS OF 450.00 FEET, A CENTRAL ANGLE OF 46°09'57", A CHORD WHICH BEARS NORTH 24 44'46" WEST 352.86 FEET, TO A 5/8-INCH IRON ROD FOUND FOR THE END OF SAID CURVE AND THE BEGINNINGOF A NON-TANGENT CURVE TO THE LEFT;

THENCE, NORTHWESTERLY, CONTINU ING ALONG SAID COMMON LINE AND ALONG THE ARC OF SAID CURVE TO THE LEFT, AN ARC DISTANCE OF 120.03 FEET, HAVING A RADIUS OF

1, 598.63FEET, A CENTRAL ANGLE OF 04°18'07", AND A CHORD WHICH BEARS NORTH 33°14'00" WEST, 120.00 FEET, TO A 5/S-INCH IRON ROD WITH PLASTIC CAP STAMPED "TERRA SURVEYING" SET FOR THE END OF SAID CURVE, FROM WHICH A 5/8-INCH IRON ROD BEARS NORTH 53°17' WEST, 4.1 FEET;

THENCE, NORTH 25°42'29" WEST, CONTINU ING ALONG SAID COMMON LINE NON-TANGENT WITH THE PREVIOUSLY DESCRIBED CURVE, A DISTANCE OF 194.29 FEET TO A 5/8-INCH IRON ROD FOUND IN THE SOUTH LINE OF A CALLED 4.3143 ACRE

TRACT CONVEYED TO MAGI INTERNATIONAL PARTNERS LIMITED, AS RECORDED UNDER H.C.C.F. NUMBER N790465 COMMON WITH THE SOUTH LINE OF MINI-SPACE SUBD IVISION , A SUBDIVISION OF RECORD IN VOLUME 182, PAGE 140 H.C.M .R., AND MARKING THE COMMON NORTHEAST CORNER OF SAID 15 .. 9359 ACRE TRACT AND SAID THOUSAND OAKS APARTMENT VILLAGES SECTION ONE. AND THE COMMON SOUTH CORNER OF RESERVE "A' AND RESERVE "B " OF SAID MINI-SPACE SUBDIVIS'ION AND THE NORTHWEST CORNER OF THE HEREIN DESCRIBED TRACT;

THENCE, SOUTH 89°54'38" EAST , ALONG THE COMMON SOUTH LINE OF THE SAJD 4.3143 ACRE TRACT AND SAID MINI-SPACE SUBDIVISION, AND THE NORTH LINE OF SAID PART IAL REPLAT OF NORTHWEST PINES APARTMENTS , A DISTANCE OF 595.65 FEET TO THE POINT OF BEGINNING AND CONTAINING 11.4500 ACRES {198,763 SQUARE FEET) OF LAND.

TRACT 2:

DESCRIPTION OF 0.0984 ACRES OF LAND (4,285 SQUARE FEET} BEING ALL OF A CALLED 0.0984 ACRE TRACT AS DESCRIBED UNDER HARRIS COUNTY CLERK'S FILE NUMBER E538598 AND BEING PART OF A CALLED 4.4490 ACRE TRACT AS DESCRIBED IN A DEED RECORDED UNDER HARRI S COUNTY CLERK 'S FILE (H.C.C.F.) NUMBER N441935 AND BEING OUT OF THE JAMES YOUNG SURVEY, ABSTRACT NO. 944, CITY OF HOUSTON, HARRIS COUNTY , TEXAS , AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: (BEARINGS ARE REFERENCED TO THE PLAT OF NORTHWEST PINES APARTMENTS AS RECORDED IN VOLUME 271, PAGE 41 OF THE HARRIS COUNTY MAP RECORDS (H.C.M.R. )

BEGINNING AT A POINT IN THE COMMON NORTH UNE OF SAID 4.4490 ACRE TRACT AND IN THE SOUTH LINE OF SAID NORTHWEST PINES APARTMENTS , SAID PO[NT BEING SOUTH 82°01'19" EAST, 253.38 FEET FROM A 5/8-INCH IRON ROD FOUND MARKING THE COMMON NORTHWEST CORNER OF SAID 4.4490 ACRE TRACT AND THE SOUTHWEST CORNER OF SAID NORTHWEST PINES APARTMENTS;

THENCE SOUTH 82°01'19" EAST, ALONG SAID COMMON LINE, A DIS TANCE OF 61.75 FEET TO A 5/8-INCH IRON ROD WITH PLASTIC CAP STAMPED "TERRA SURVEYING" SET MARKING THE BEGINNING OF A NON-TANGENT CURVE TO THE LEFT FROM WHICH A FOUND 5/8-INCH IRON ROD BEARS NORTH 70°24' WEST. 0.3 FEET;

THENCE SOUTHEASTERL Y. ALONG THE ARC OF SAID CURVE TO THE LEFT, AN ARC DISTANCE OF 60.12 FEET, HAVING RADIUS OF 92.61 FEET, A CENTRAL ANGLE OF 37°11'42" , AND A CHORD WHICH BEARS SOUTH 71°44'57 " EAST 59.07 FEET. TO A 5/8-I NCH IRON ROD FOUND MARK ING A POINT FOR THE BEGINNING OF A NON-TANGENT CUR VE TO THE RIGHT;

THENCE SOUTHEASTERL Y, ALONG THE ARC OF SAID CURVE TO THE RIGHT, AN ARC DISTANCE OF 112.46 FEET, HAVING A RADIUS OF 50.00 FEET , A CENTRAL

ANGLE OF 12°52'16" , A CHORD BEARING SOUTH 84°34'43" WEST, 90.21 FEET TO A POINT ;

THENCE SOUTH 59°01'01" WEST, NON-TANGENT WITH THE PREVIOUSL Y DESCRIBED CURVE , A DISTANCE OF 21.00 FEET TO A POINT FOR THE BEGINNING OF A NON-TANGENT CURVE TO THE RIGHT;

THENCE NORTHWESTERL Y, ALONG THE ARC OF SAID CURVE TO THE RIGHT HAVING A RADIUS OF 71.00 FEET, A CENTRAL ANGLE OF 38°57'40", A CHORD BEARI NG NORTH 11°30'04" WEST 47.35 FEET, A TOTAL ARC DISTANCE OF 48.28 FEET TO THE POINT OF BEGINNING AND CONTAINING 0.0984 ACRES OF LAND (4, 285 SQUARE FEET).

TRACT 3:

DESCRIPTION OF 0.0572 ACRE OF LA ND (2,490 SQUARE FEET) BEING ALL OF A CALLED 0.0572 ACRE TRACT AS DESCRIBED UNDER HARRIS COUNTY CL ERK'S FILE NUMBER(S) E538598 AND BEING PART OF A CALLED 4.4490 ACRE TRACT AS DESCRIBED IN A DEED RECORDED UNDER HARRIS COUNT Y CLERK 'S FILE (H.C.C.F.) NUMBER N441935 AND BEING OUT OF THE JAMES YOUNG SURVEY, ABSTRACT NO. 944, CITY OF HOUSTON HARRIS COUNT Y, TEXAS AND BEING MORE PART ICULARL Y DESCRIBED AS FOLL OWS: (BEARINGS ARE REFERENCED TO THE PLAT OF NORTHWEST PINES APARTMENTS AS RECORDED IN VOLUME 261 PAGE 41 OF THE HARRIS COUNTY MAP RECORDS)

BEGINN ING AT A 5/8-INCH IRON ROD FOUND MARKING THE COMMON NORTHWEST CORNER OF SAID 4.4490 ACRE TRACT AND THE SOUTHWEST CORNER OF SAID NORTHWEST PINES APARTMENTS;

THENCE SOUTH 82°01'19" EAST, ALONG THE COMMON SOUTH LINE OF SAID NORTHWEST PINE APARTMENTS AND THE NORTH LINE OF SAID 4.4490 ACRE TRACT A DISTANCE OF 10.67 FEET TO A POINT FOR THE BEG'I NNING OF A NON-TANGENT CURVE TO THE RIGHT·

THENCE SOUTHEASTERL Y, ALONG THE ARC OF SAID CURVE TO THE RI GHT, AND ARC DISTANCE OF 241.82 FEET, HAVING A RADIUS OF 1,608.63 FEET, A CENTRAL ANGLE OF 08°49'37", A CHORD WHICH BEARS SOUTH 07°56'58" EAST, 247.58 FEET, TO A POINT ;

THENCE SOUTH 86°27'50" WEST, NON-TAN GENT WITH THE PREVIOUSLY DESCRIBED CURVE , A DISTANCE OF 10.00 FEET TO A POINT IN THE COMMON WEST LINE OF SAID 4.4490 ACRE TRACT AND THE EAST LINE OF THOUSAND OAKS APARTMENTS, SECTION ONE AS RECORDED IN VOLUME 172 . PAGE 62 H.C.M.R, AND IN THE RC OFA NON-TANGENT CURVE TO THE LEFT:

THENCE NORTHWESTERLY, ALONG SAID COMMON LINE AND ALONG THE ARC OF SAID CURVE TO THE LEFT HAVING A RADIUS OF 1 ,598.63 FEET, A CENTRAL ANGLE OF 08°00'58" WEST

249.74 FEET, A TOTAL ARC DISTANCE OF 250.00 FEET TO THE POINT OF BEGINNING AND CONTAINING 0.0572 ACRE (2 ,490 SQUARE FEET) OF LAND.

EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Case No. 25-34507 |
| ROSSLYN2016 LLC, *et al.*, | § | Chapter 7 |
| Debtors.[1] | § | (Jointly Administered) |

**ORDER (I) AUTHORIZING AND APPROVING SETTLEMENT AGREEMENT, AND (II) GRANTING RELATED RELIEF**

On this day came on to be heard the Chapter 7 Trustee's Motion (the "**Motion**")[2] for entry of an order, pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") (a) authorizing and approving entry into that certain Settlement Agreement, dated as of February 24, 2026, by and between the Chapter 7 Trustee, Morgan Stanley Private Bank, National Association, and TL-I, LLC, attached hereto as **Exhibit A** (the "**Settlement Agreement**"), (b) approving the Chapter 7 Trustee's performance of her obligations under the Settlement Agreement, and (c) approving and effectuating the releases provided by the Estate Releasing Parties as and to the full extent set forth in **Section 4** of the Settlement Agreement, effective as of the Settlement Effective Date; and upon consideration of the Motion and all related pleadings, and the argument of the parties and the evidence adduced at the hearing on the Motion, if any (the "Hearing"); and due and sufficient notice of the Motion and the Hearing having been

[1] The Debtors in these Chapter 11 cases (collectively, the "Debtors"), together with the last four digits of each of the Debtors' federal tax identification numbers, are: Texas Esencia 2019 LLC (6173); Rosslyn2016 LLC (8187); and Timber2020 LLC (8914). The Debtors' service address is 8600 Woodway Drive, Houston, Texas 77063.

[2] Capitalized terms used but not otherwise defined herein have the meaning ascribed to such terms in the Motion.

given under the circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Estates, their creditors, their stakeholders, and other parties in interest; and good cause appearing therefor; and based on the Court's findings of fact and conclusions of law announced on the record at the Hearing, which findings of fact and conclusions of law are incorporated herein by reference; it is hereby

**Found and Determined That:**[3]

A. **Jurisdiction and Venue**. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B. **Hearing and Notice**. As evidenced by the certificate of service previously filed with the Court, and based on the representations of counsel at the Hearing, (i) proper, timely, adequate, and sufficient notice of the Motion, the Hearing, and approval of the Settlement Agreement has been provided in accordance with Section 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 9006, and the Local Rules of this Court, (ii) such notice was good, sufficient, and appropriate under the circumstances, and (iii) no other or further notice of the Motion, the Hearing, or the Settlement Agreement is or shall be required.

C. **Opportunity to Object**. A fair and reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities.

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

D. **Settlement and Compromise**. The Motion describes, and the Settlement Agreement contemplates, a comprehensive release and settlement of the Released Claims (the "**Compromise and Settlement**"), which release and settlement are supported by valuable consideration.

E. **Release**. The release of the Released Claims by the Estate Releasing Parties, as and to the fullest extent set forth in the Settlement Agreement (the "**Release**"), is critical to the settlements and compromises thereunder, is supported by fair and reasonable consideration, is in the best interests of the Estates, and, accordingly, is hereby approved pursuant to Bankruptcy Rule 9019; provided, however, that such Release is subject to the conditions, limitations, exclusions, and stipulations set forth in the Settlement Agreement in all respects, and shall be effective upon the Settlement Effective Date.

F. **Fair and Equitable/Best Interest**. Approval of the Compromise and Settlement is (i) fair and equitable, (ii) in the best interests of the Estates, and (iii) falls within the reasonable range of litigation possibilities. The balance between the likelihood of the Trustee's success on the merits after lengthy and costly litigation when compared to the concrete and tangible benefit of the Compromise and Settlement weighs in favor of approval of the Compromise and Settlement. Moreover, it is certain that litigation of the Released Claims would be costly, complex and protracted. The Trustee relied on experienced counsel when exercising her business judgment to enter into the Compromise and Settlement.

G. **Arm's-Length Process**. The negotiation and execution of the Settlement Agreement was at arm's length and in good faith, and at all times each of the Parties were represented by competent, independent counsel of their choosing.

H. **Legal and Factual Bases**. The legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein.

**It is therefore ORDERED, ADJUDGED AND DECREED THAT:**

1. The Motion is GRANTED as set forth herein.

2. The Compromise and Settlement, including the Settlement Agreement and all of its provisions (including the Release), are hereby approved, and the Release is incorporated fully herein. The Trustee is authorized to enter into, perform her obligations under, and take all other actions necessary to effectuate the Settlement Agreement pursuant to sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 6004 and 9019.

3. This Order, and the Settlement Agreement approved hereunder, shall be binding on all parties in interest in the Chapter 7 Cases (including, but not limited to, any subsequently appointed chapter 7 trustee or any other representative of the Debtors' estates) and in each case, on each of their predecessors or successors.

4. Effective as of the Settlement Effective Date, all Estate Releasing Parties, and any and all creditors and parties in interest in the Chapter 7 Cases, which have held or asserted, which hold or assert, or which in the future may hold or assert any Released Claims, directly or indirectly, against any of the Morgan Stanley Released Parties, shall be forever barred and enjoined from (a) asserting against any Morgan Stanley Released Parties, or (b) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against any Morgan Stanley Released Parties on account of or in connection with or with respect to, any Released Claim. Any of the Morgan Stanley Released Parties may enforce this Order as a defense to any claim or cause of action brought against such Morgan Stanley Released Party that is enjoined under the Settlement Agreement and this Order as to such Morgan Stanley Released Party, and may seek to enforce such injunction in a court of competent jurisdiction. The

Bankruptcy Court shall retain exclusive jurisdiction to hear and determine any dispute as to whether any claim asserted against any of the Morgan Stanley Released Parties constitutes a Released Claim.

5. For the avoidance of doubt and notwithstanding anything to the contrary in this Order or the Settlement Agreement, no creditor or other non-Debtor party shall be barred or enjoined from (a) asserting against any Morgan Stanley Released Party any claim, liability, obligation, defense, or cause of action that (i) is not property of any of the Debtors' estates or derivative of a claim or cause of action that is property of any of the Debtors' estates, (ii) is based on an independent legal duty owed by a Morgan Stanley Released Party to such creditor or other non-Debtor party, and (iii) may be asserted by such creditor or other non-Debtor party directly against any of the Morgan Stanley Released Parties under applicable non-bankruptcy law (each, a "**Direct Third Party Claim**"), or (b) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind against any Morgan Stanley Released Party on account of or in connection with or with respect to any Direct Third Party Claim.

6. Prior to asserting any claims or causes of action, including by filing a lawsuit in state or federal court or otherwise, against the Morgan Stanley Released Parties related to the foreclosure of the Properties, any former, present, or future affiliates or insiders of the Debtors, including, without limitation, Kalkan, must first seek approval of the Bankruptcy Court by motion for leave to assert such claims or causes of action, with such motion for leave specifically establishing that such claims and/or causes of action constitute Direct Third Party Claim(s) and not Released Claims. Nothing herein, however, will limit any parties' ability to assert any defense to a claim by the Morgan Stanley Released Parties, including without seeking approval of the Bankruptcy Court, except to the extent such defense is barred by the Release.

7. The Morgan Stanley GUC Claims, as evidence by the Morgan Stanley Proofs of Claim, are hereby allowed as follows: Morgan Stanley has an allowed general unsecured claim (a) against the Rosslyn estate in the amount of $4,939,127.13; (b) against the Texas Esencia estate in the amount of $5,219,734.20; and (c) against the Timbers estate in the amount of $4,533,838.15. Other than the Morgan Stanley GUC Claims and claims (if any) to enforce, or for damages for breach of, the Settlement Agreement, Morgan Stanley shall not assert any other or greater claims against the Estates; *provided, however,* that, for the avoidance of any doubt, nothing herein or in the Settlement Agreement shall discharge, waive, release or limit, in any way, Morgan Stanley's rights, claims, and defenses as against Kalkan (including, without limitation, Morgan Stanley's rights under any personal guarantees executed by Kalkan in connection with the Loans), all such rights, claims and defenses being hereby expressly reserved.

8. Morgan Stanley stipulates and agrees that its legal, valid and properly perfected security interests and liens on the Collateral will, solely for purposes of distributions to holders of allowed unsecured claims in the Chapter 7 Cases, not encumber the Estates' right to any insurance recoveries with respect to the Properties; *provided, however*, that Morgan Stanley's rights with respect to Insurance Claims are fully reserved to the extent the Chapter 7 Cases are dismissed or the Trustee abandons or otherwise elects not to pursue the Insurance Claims; *provided, further,* that, to the extent the proceeds of any such insurance recoveries with respect to the Properties are distributed to unsecured creditors in the Chapter 7 Cases, Morgan Stanley shall be entitled to its *pro rata* share of such distributions on account of the Morgan Stanley GUC Claims. However, for avoidance of doubt, Insurance Claims will not include any insurance claims Morgan Stanley may have in relation to the Properties pursuant to any separate insurance policy Morgan Stanley may

have thereon that are paid for directly by Morgan Stanley or an affiliate thereof, including any force placed policies.

9. The following adversary proceedings are hereby dismissed with prejudice and shall be administratively closed following entry of this Order:

| **Adversary No.** | **Case Style** |
|---|---|
| 25-03804 | *Rosslyn2016, LLC and Fercan Kalkan v. Morgan Stanley Private Bank* |
| 25-03805 | *Rosslyn2016, LLC and Fercan Kalkan v. Morgan Stanley Private Bank* |
| 25-03806 | *Texas Esencia 2019, LLC and Kalkan v. Morgan Stanley Private Bank* |
| 25-03807 | *Timbers2020, LLC and Fercan Kalkan v. Morgan Stanley Private Bank* |
| 25-03808 | *Rosslyn2016, LLC v. Morgan Stanley Private Bank and TL-I, LLC* |
| 25-03809 | *Timbers2020, LLC v. Morgan Stanley Private Bank and TL-I, LLC* |
| 25-03810 | *Texas Esencia 2019, LLC v. Morgan Stanley Private Bank and TL-I, LLC* |

10. For the avoidance of doubt, to the extent the automatic stay provisions of section 362 of the Bankruptcy Code would otherwise apply, such provisions are vacated and modified to effectuate all of the terms of the Settlement Agreement, including to permit the parties thereto to send any notices contemplated thereunder, or to exercise any right or perform any obligation in accordance with the terms thereof.

11. Any objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, including all reservations of rights included therein, are hereby overruled on the merits and denied with prejudice.

12. Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

13. The Trustee is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

14. This Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

15. In the event of any conflict(s) or inconsistency between this Order and the Settlement Agreement, this Order shall govern.

SIGNED: _____________, 2026.

______________________________________
UNITED STATES BANKRUPTCY JUDGE
HONORABLE EDUARDO V. RODRIGUEZ