United States Bankruptcy Court
Southern District of Texas

**ENTERED**
July 14, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 25-34507** |
| **ROSSLYN2016, LLC** | § | |
| **and** | § | |
| **TEXAS ESENCIA 2019 LLC** | § | |
| **and** | § | |
| **TIMBERS2020 LLC,** | § | |
| Debtors. | § | **Jointly Administered** |
| | § | **CHAPTER 7** |

## MEMORANDUM OPINION

This Court addresses a matter of profound concern regarding the integrity of the bankruptcy process, the professional responsibility of counsel, and the proper administration of justice. The facts are troubling and warrant the Court's careful attention. Three entities, Kitchen Central, LLC, CirCir, LLC, and Adil Property, Inc. (collectively, the "*Petitioning Creditors*"), filed involuntary petitions against the three debtors in this case (the "*Debtors*"), represented by attorney Gregory W. Mitchell ("*Mitchell*"). The claims underlying these involuntary petitions were riddled with inconsistencies that alerted Allison D. Byman, the Chapter 7 Trustee, ("*Trustee*") to potential fraud on the court. In response, the Trustee served Bankruptcy Rule 2004 document requests to determine whether the Petitioning Creditors' claims had any evidentiary support. The Petitioning Creditors, through Mitchell, responded with motions to quash containing fabricated quotations, non-existent citations, and invented legal authority apparently generated by artificial intelligence and submitted them to the Court without verification.

This Court denied the frivolous motions to quash on April 30, 2026, and ordered production of documents within seven days. The Petitioning Creditors and Mitchell failed to comply. No documents were produced by the May 7, 2026, deadline. When the Trustee filed a motion for

contempt on May 12, 2026, Mitchell belatedly produced documents that failed to support the Petitioning Creditors' claims. Shortly thereafter, on May 17, 2026, the Petitioning Creditors withdrew all of their proofs of claim.

For the reasons stated herein, the Trustee's Motion to Enforce at ECF No. 254 and Supplemental Motion at ECF No. 263 are GRANTED. The Court finds that Mitchell violated Federal Rule of Civil Procedure 11(b), as made applicable by Bankruptcy Rule 9011, by submitting the Motions to Quash at ECF Nos. 218, 219, 220, and 221. As a sanction for his Federal Rule of Civil Procedure 11(b) violation, Mitchell shall register and obtain six hours of continuing legal education from the State Bar of Texas on the use of generative AI in the courts and file a certificate of compliance with the Clerk of Court no later than **Monday, August 31, 2026**.

The Court finds that (i) the Petitioning Creditors and Mitchell violated the Court's April 30, 2026, Order at ECF No. 241 denying the Motions to Quash by failing to produce documents responsive to the Trustee's Bankruptcy Rule 2004 requests by the May 7, 2026, deadline; (ii) the Petitioning Creditors and Mitchell are in civil contempt of the April 30, 2026, Order; (iii) Mitchell and the Petitioning Creditors engaged in bad faith conduct that abused the judicial process and the bankruptcy system, warranting sanctions under the Court's inherent power and Section 105 of the Bankruptcy Code, and; (iv) the Petitioning Creditors and Mitchell are JOINTLY AND SEVERALLY LIABLE to the Trustee for the payment of attorneys' fees and costs in the amount of **$29,877.00,** representing reasonable compensation for the Trustee's counsel's time and expenses incurred in: (1) reviewing the Petitioning Creditors' Proofs of Claim ($2,593.00); (2) filing objections to the Motion for Continuance of a Bankruptcy Rule 9019 hearing filed by Mitchell and the Petitioning Creditors ($2,100.50); (3) preparing Bankruptcy Rule 2004 discovery requests ($4,721.50); (4) reviewing, analyzing, and responding to the Motions to Quash

($13,466.00); (5) preparing the Motion to Enforce ($2,385.00); and (6) preparing the Trustee's Omnibus Reply in support of sanctions ($4,611.00). The Petitioning Creditors and Mitchell shall pay the aforementioned sum of $29,877.00 to the Trustee no later than **Monday, August 31, 2026**. Payment shall be made by certified check or money order payable to "Allison D. Byman, Chapter 7 Trustee" and delivered to counsel for the Trustee at Porter Hedges LLP, 1000 Main Street, 36th Floor, Houston, Texas 77002.

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

## I.   FINDINGS OF FACT

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure ("*Rule*") 52, which is made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure ("*Bankruptcy Rule*") 7052.  To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such. This Court made certain oral findings and conclusions on the record. This Memorandum Opinion supplements those findings and conclusions. If there is an inconsistency, this Memorandum Opinion controls.

### A.  Background

#### 1.  The involuntary petitions and inconsistent claims

On August 4, 2025, the Petitioning Creditors filed involuntary petitions against the three Debtors in this case: Rosslyn2016 LLC (Case No. 25-34507), Texas Esencia 2019 LLC (Case No. 25-34508), and Timbers2020 LLC (Case No. 25-34510). ECF. No. 1. These three bankruptcy cases are jointly administered under the instant bankruptcy Case No. 25-34507. ECF No. 10. These involuntary petitions were filed shortly after this Court dismissed the Debtors' prior voluntary chapter 11 cases with prejudice to refiling. *See e.g.*, Case No. 25-31816, ECF No. 84. The Petitioning Creditors filed proofs of claim on January 6, 2026 totaling approximately $2.5 million. (the "*Proofs of Claim*"). *Claims Register*, Claims No. 6–8. As explained *infra*, the record reveals significant and troubling inconsistencies between the involuntary petitions, the Debtors' schedules, and the Proofs of Claim filed by the Petitioning Creditors.

#### 2.  The Trustee's Bankruptcy Rule 2004 Discovery Requests

Due to the significant inconsistencies and lack of supporting documents in connection with the Petitioning Creditors' Proofs of Claim, the Trustee served document requests pursuant to

Bankruptcy Rule 2004 on the Petitioning Creditors and Mitchell on April 1, 2026. ECF. Nos. 208–212. The Bankruptcy Rule 2004 requests sought documents including bank statements, wire confirmations, check copies, and transfer confirmations evidencing the transfer of funds alleged in the promissory notes referenced in the Proofs of Claim; documents showing the source of funds transferred to the Debtors; payment history, account statements, or records of payments for the alleged loans; documents and communications concerning the drafting or execution of the notes; demand letters, notices of default, notices of acceleration, reservations of rights, collection letters, demand emails, or similar communications related to the notes; and any other documents supporting, relating to, or evidencing any claim against the Debtors. *See e.g.*, ECF No. 208-1. The Trustee's stated purpose behind these requests was to investigate and determine whether she had a basis to object to the Petitioning Creditors' claims and to investigate potential fraud on the Court in the filing of the involuntary petitions. ECF No. 229.

3. **The Petitioning Creditors' Responses and Motions to Quash**

On April 15, 2026, Mitchell and each of the Petitioning Creditors served written discovery responses to the Trustee and filed motions to quash (the "*Motions to Quash*"). ECF. Nos. 218–221. In response to the Trustee's document requests, the Petitioning Creditors each responded that there were no responsive documents to the critical requests. Specifically, they claimed that no documents existed showing the transfer of funds alleged in the promissory notes, the source of funds transferred to the Debtors, payment history or records of payments, documents concerning the drafting or execution of the notes, or any demand letters, notices of default, or similar communications. ECF No. 284, Exs. 1–3. Rather than immediately withdrawing their claims in light of the absence of supporting documentation, the Petitioning Creditors and Mitchell filed the Motions to Quash. ECF. Nos. 218–221. The central legal argument in these motions was based on

an erroneous assertion that Bankruptcy Rule 2004 could not be used when adversarial litigation was "contemplated" or "anticipated" by the Trustee. *See e.g.*, ECF No. 218 at 6–7.

### 4. The Fabricated Citations and Invented Legal Authority

The Motions to Quash contained multiple fabricated quotations presented as direct authority for the proposition that Bankruptcy Rule 2004 cannot be used when litigation is merely contemplated. Specifically, Mitchell, among other things, cited the following three direct quotations that do not exist in the cited cases or any other case law: (1) Rule 2004 could not be used as a "premature and unauthorized substitute for formal discovery"; (2) "when a specific dispute has matured to the point where it could be adjudicated through a contested matter or adversary proceeding, Rule 2004 examination is not an appropriate substitute for discovery"; and (3) Bankruptcy Rule 2004 "may not be used as a device for discovery in anticipated litigation." *See e.g.*, ECF No. 219 at 3, 4 and ECF No. 218 at 4. The Trustee identified these quotations as apparent artificial intelligence hallucinations, noting that they do not exist in the cited cases or any other case law. ECF No. 229, Ex. 1. The Trustee's response highlighted numerous other examples suggesting AI hallucinations, including direct quotations that did not exist in the cited cases, misrepresentations of authority, and citations to cases that did not exist. *Id*. In response to the issues highlighted by the Trustee, this Court issued its Show Cause Order on April 30, 2026, directing Mitchell to show cause as to why he should not be sanctioned for the apparent use of generative artificial intelligence to manufacture legal authority without verification. ECF No. 242. The Show Cause Order referenced Southern District of Texas General Order 2025-04, which cautions attorneys against submitting pleadings drafted using generative artificial intelligence without checking for accuracy and holds attorneys responsible for the contents of any filing under Rule 11, regardless of whether generative artificial intelligence drafted any portion of it. *Id*.

5. **This Court's April 30, 2026 Order Denying the Motions to Quash**

On April 30, 2026, this Court held a hearing on the Motions to Quash and determined that they should be denied. The Court entered its order denying the Motions to Quash, which ordered Mitchell to respond to all requests for production in the Trustee's Bankruptcy Rule 2004 notice by May 7, 2026 (the "*Turnover Order*"). ECF. No. 241.

6. **Non-Compliance with the Turnover Order**

Despite the clear deadline established by the Turnover Order, the Petitioning Creditors and Mitchell failed to produce any documents by May 7, 2026. On May 10, 2026, three days after the deadline, Mitchell and the Petitioning Creditors filed a Notice of Withdrawal of Documents attempting to withdraw the Motions to Quash even though the Court had already ruled on and denied them on April 30, 2026. ECF No. 253.

7. **The Trustee's Motion to Enforce and Late Document Production**

On May 12, 2026, the "Trustee filed the Motion to Enforce Order Denying Petitioning Creditors' and Their Counsel's Motions to Quash and for Civil Contempt," (the "*Motion to Enforce*") seeking to enforce the Turnover Order and to hold the Petitioning Creditors and Mitchell in contempt for failing to produce documents by the May 7, 2026 deadline. ECF No. 254. Shortly after the Trustee filed the Motion to Enforce on May 12, 2026, Mitchell produced documents on behalf of the Petitioning Creditors and himself. The documents produced included screenshots of payment confirmations for payments made from Texas Excel Property Management to the Petitioning Creditors, check images for payments from Texas Excel Property Management to the Petitioning Creditors, payment report spreadsheets summarizing the screenshots and checks, promissory notes already filed with the Court as attachments to the Proofs of Claim, lien documents filed against the Debtors' properties on November 8, 2024, proofs of claim already

filed with the Court, and approximately thirty-six emails exchanged between Mitchell and attorney Joyce Lindauer between August 11, 2025, and April 30, 2026. ECF No. 286, Ex. 5.

However, the documents produced were woefully deficient. Critically, the Petitioning Creditors did not produce any documents confirming that they had transferred the principal amounts reflected in their respective promissory notes to the Debtors. The documents that were produced only showed payments to the Petitioning Creditors, but did not evidence that the Petitioning Creditors had advanced funds to the Debtors.

### 8. Withdrawal of the Proofs of Claim

On May 17, 2026, the Petitioning Creditors filed their Original and Amended Notices of Withdrawal of Proofs of Claim, ECF. Nos. 258, 261, withdrawing each of the Proofs of Claim filed in these cases. The Petitioning Creditors asserted in their notices of claim withdrawal that the claims were withdrawn for economic reasons not based on the merits. ECF No. 258.

### 9. Mitchell's Explanations and Objections

In response to the Motion to Enforce, Mitchell provided explanations for the late document production. He claimed that responsive documents were received from the Petitioning Creditors beginning on or about May 2, 2026, but he had technical issues downloading the documents. ECF No. 257. On or about May 4, 2026, after returning from traveling, Mitchell began compiling documents responsive to requests directed at him. *Id.* Responsive documents had largely been compiled by May 7, 2026, but technical issues continued through May 8, 2026. *Id.* Mitchell left town on May 8, 2026 on a long-planned trip to the wedding of a close family friend. *Id.* Technical issues were resolved by the end of the day on Monday, May 11, 2026. A Dropbox link to 200 plus pages of responsive documents was sent to the Trustee's counsel on May 12, 2026, shortly after the Motion to Enforce was filed. *Id.*

Mitchell regretted not informing the Trustee's counsel of the technical issues and claimed that the delay was not the product of any intent to disrespect the Court's Order, but simply the product of technical issues. *Id.*  In his Supplemental Response to the Motion to Enforce, Mitchell argued that the production was adequate because documents produced clearly demonstrate payments made by the Debtors pursuant to promissory notes; the withdrawal of claims was an economic decision, not based on merits; the Trustee's discovery was pretextual retaliation for the Petitioning Creditors' objection to the Trustee's motion to approve a settlement with Morgan Stanley; and the Trustee had "bullied" the Petitioning Creditors. ECF No. 264.

**10. The Trustee's Supplemental Motion and Request for Sanctions**

On May 19, 2026, the Trustee filed its supplement to the Motion to Enforce (the "*Supplemental Motion*"). ECF No. 263. The Supplemental Motion documents the withdrawal of all Proofs of Claim and requests that the Court enter an order requiring the Petitioning Creditors and Mitchell to reimburse the estates for all fees incurred in connection with the discovery, the frivolous Motions to Quash, and the Motion to Enforce. ECF No. 263.

**11. The June 10, 2026 Show Cause Hearing**

On June 10, 2026, the Court held a hearing where it considered the Motion to Enforce and required Mitchell to show cause as to why he should not be sanctioned for his apparent use of generative AI without proper verification. At the hearing, Mitchell testified that the inaccurate legal citations in his Motions to Quash resulted from his use of a prior template. June 10, 2026 H'rg (Mitchell testifying). He could not recall or identify the template's origin and acknowledged that he did not verify any of the citations in the Motions to Quash, admitting that some were "clearly" not accurate. *Id.* Notably, Mitchell is a sole practitioner who received no assistance from any other lawyer or legal professional in drafting the Motions to Quash. *Id.* Mitchell testified that

he does not use ChatGPT but acknowledged that he used AI tools available through Westlaw in his legal practice. *Id.* Regarding his failure to comply with the Turnover Order denying the Motions to Quash, Mitchell stated that he forgot to calendar the deadline for turning over documents and did not realize it had passed until the Motion to Enforce was filed. *Id.*

## II.   CONCLUSIONS OF LAW

### A.  Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6. *In re*: *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012). Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter. 28 U.S.C. § 157(a); *see also In re: Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012). This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) and (O) this proceeding contains core matters, as it primarily involves proceedings concerning the administration of this estate. *See* 28 U.S.C. § 157(b)(2)(A) & (O). This proceeding is also core under the general "catch-all" language because such a suit is the type of proceeding that can only arise in the context of a bankruptcy case. *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.*), 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987)).

This Court may only hear a case in which venue is proper. 28 U.S.C. § 1408.  28 U.S.C. § 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under

title 11 may be commenced in the district court in which such case is pending." Debtors' bankruptcy case is pending in this Court and therefore, venue of this proceeding is proper.

## B. Constitutional Authority to Enter a Final Order

While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters. *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015). The present matter is core under § 157(b)(2)(A) and (O) as it primarily involves proceedings concerning the administration of this estate and can only arise in the context of bankruptcy. *See Garrett v. Coventry II DDR/Trademark Montgomery Farm, L.P. (In re White-Robinson)*, 777 F.3d 792, 795 (5th Cir. 2015) ("[T]he proceeding was core because holding a party in civil contempt for refusing to follow a bankruptcy court's valid and binding orders 'would have no existence outside of the bankruptcy' proceeding."). Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order here. *See, e.g.*, *Badami v. Sears (In re AFY, Inc.),* 461 B.R. 541, 547-48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); see also *Tanguy v. West (In re Davis),* No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' .... We decline to extend *Stern's* limited holding herein.") (Citing *Stern*, 564 U.S. at 475, 503, 131 S.Ct. 2594).

Alternatively, this Court has constitutional authority to enter a final order because all parties in interest have consented, impliedly if not explicitly, to adjudication of this dispute by this Court. *Wellness Int'l Network,* 575 U.S. at 683 ("*Sharif* con-tends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . ."). None of these parties has ever objected to this Court's constitutional authority to enter a final order or judgment in this matter. These circumstances unquestionably constitute implied consent. Thus, this Court wields the constitutional authority to enter a final order here.

### III.   ANALYSIS

#### A.  The Trustee's Bankruptcy Rule 2004 Requests

The Court will first discuss why the Trustee's Bankruptcy Rule 2004 requests were proper and legitimate.

#### 1.  The Trustee is not barred from using Bankruptcy Rule 2004 to evaluate whether to file an objection to a proof of claim

The Petitioning Creditors' primary defense rests on a mischaracterization of the scope of Bankruptcy Rule 2004. ECF No. 264. The scope of Bankruptcy Rule 2004 examinations is broad and is commonly recognized as a proper "fishing expedition" to investigate matters that may affect the administration of the estate. *In re McClain Feed Yard, Inc.*, 661 B.R. 136, 142 (Bankr. N.D. Tex. 2024). But once an adversary proceeding has been initiated, the broad and unfettered discovery permitted under Bankruptcy Rule 2004 is supplanted by the more restrictive discovery procedures of Bankruptcy Rules 7026 through 7037. *Helena Agri-Enters., LLC v. Young* (*In re Young*), Nos. 17-14065-NPO, 18-01017-NPO, 2018 Bankr. LEXIS 3646, at *13 (Bankr. N.D. Miss. Nov. 19, 2018); *In re Kipp*, 86 B.R. 490, 491 (Bankr. W.D. Tex. 1988). Thus, a party is

generally prohibited from utilizing a Bankruptcy Rule 2004 examination to obtain discovery relevant to the issues in a pending adversary proceeding. *In re Kipp*, 86 B.R. at 491. But, there is no legal authority that supports, or even implies, that the mere contemplation of litigation limits the scope of Bankruptcy Rule 2004 discovery.

Petitioning Creditors and Mitchell argue that because adversarial litigation was "contemplated" or "anticipated," the Trustee's Bankruptcy Rule 2004 requests became improper. *See e.g.,* ECF No. 218 at 4, ECF No. 219 at 3. But as explained *supra*, the authorities cited for this argument did not support it. In contrast, case law supports that Bankruptcy Rule 2004 examination can be used prior to a filing of an objection to a proof of claim or commencement of litigation. *See e.g.*, *Hope 7 Monroe St. Ltd. P'ship v. Riaso, LLC (In re Hope 7 Monroe St. Ltd. P'ship)*, 743 F.3d 867, 874 (D.C. Cir. 2014); *In re Wilson*, 413 B.R. 330, 336 (Bankr. E.D. La. 2009) ("Bankruptcy Rule 2004 is a pre-litigation discovery device . . . [that] allows for the discovery of evidence and examination of parties before an adversary proceeding has been initiated."); *In re Baroni*, 643 B.R. 253, 299 (Bankr. C.D. Cal. 2022) ("Generally, movants can use Rule 2004 to conduct discovery before filing their motions for relief."). Indeed, at the June 10, 2026 hearing, Mitchell conceded that the Motions to Quash relied on some citations that were "clearly" not accurate. June 10, 2026 H'rg (Mitchell testifying).

In this case, the Trustee had not filed any objections to the Petitioning Creditors' claims at the time the Bankruptcy Rule 2004 requests were served. The mere fact that the Trustee was considering whether to pursue litigation on the Proofs of Claim does not bar or limit Bankruptcy Rule 2004 discovery. Thus, the Trustee properly used the Bankruptcy Rule 2004 requests to investigate the validity of the Proofs of Claim.

**2.  The Trustee had substantial grounds to investigate claim validity**

The Trustee's Bankruptcy Rule 2004 requests were grounded in legitimate concerns about the validity and authenticity of the Petitioning Creditors' Proofs of Claim. The record demonstrates multiple red flags that warranted investigation. The Petitioning Creditors' claim characterizations were inconsistent across the Involuntary Petition, schedules, and the Proofs of Claim. Adil Property Inc., CirCir, LLC, and Kitchen Central all filed proofs of claims in this instant involuntary bankruptcy case for "Promissory Notes" in the amount of $1 million, $1,107,500 and $418,195 respectively. *See Claims Register*, Claims 6-1, 7-1 and 8-1. But none of the Petitioning Creditors filed proofs of claim in the prior voluntary bankruptcy case. *See generally* Case No. 25-31816, *Claims Register*. Adil Property Inc. and CirCir, LLC were not included in the Debtors' schedules in either this bankruptcy case or the prior voluntary case. *See* ECF Nos. 12, 15, and 18; Case No. 25-31816, ECF Nos. 53, 54, and 55. And although the Petitioning Creditors' Proofs of Claim reference "Promissory Notes," the Involuntary Petition categorized them as an "Investment." *See* ECF No. 1.

Mitchell did not appear for the Petitioning Creditors prior to the voluntary bankruptcy case's dismissal with prejudice. The Proofs of Claim also did not attach sufficient documents to support the basis for the claims or explain the inconsistencies between the Proofs of Claim, the schedules and the Involuntary Petition. *See Claims Register*, Claims 6-1, 7-1 and 8-1. Moreover, when the Trustee requested supporting documentation such as bank records, wire transfer confirmations, source documentation, payment histories, and demand letters, the Petitioning Creditors and Mitchell responded that these key categories of documents did not exist. ECF No. 284, Exs. 1–3.

The inconsistencies among the Involuntary Petition, schedules, and Proofs of Claim, the Petitioning Creditors' inability to reconcile those inconsistencies, and the Petitioning Creditors'

representation that they lacked documents supporting the Proofs of Claim demonstrate that the Trustee properly exercised her statutory duty to investigate the validity of the Proofs of Claim through a Rule 2004 examination. As such, Mitchell's assertion that the Trustee employed Bankruptcy Rule 2004 as a pretextual retaliation for the Petitioning Creditors' objection to a settlement with Morgan Stanley is without merit. *See* ECF No. 264, at 2, ¶ 5.

**B. The Petitioning Creditors and Mitchell are in civil contempt of the April 30, 2026 Order**

**1. The Trustee has met her prima facie burden for civil contempt**

To establish civil contempt, the moving party must show, by clear and convincing evidence, that a court order was in effect, the order required certain conduct by the respondent, and the respondent failed to comply with the court's order. *FDIC v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995). Civil contempt is remedial in nature and is designed to compel compliance with a court order or to compensate a party for losses resulting from noncompliance. *Carter v. Loc. 556, Transp. Workers Union of Am.*, 156 F.4th 459, 503 (5th Cir. 2025). The absence of willfulness does not relieve one from civil contempt. *Id.* at 502 n.15 (citing *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000)); *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("The absence of willfulness does not relieve from civil contempt."). Since the purpose is remedial, a party's failure to comply with a clear court order constitutes civil contempt even absent a showing of deliberate defiance or bad faith intent. *See Carter*, 156 F.4th at 503; *McComb*, 336 U.S. at 191. The focus is on the objective fact of noncompliance, not on the subjective mental state of the respondent. *See Carter*, 156 F.4th at 503; *McComb*, 336 U.S. at 191.

The Trustee has met her prima facie burden of each element of civil contempt. First, the Court entered its Turnover Order requiring Petitioning Creditors and Mitchell to respond to all requests for production. ECF No. 241. Second, the Turnover Order explicitly required respondents

to produce documents responsive to the Trustee's Bankruptcy Rule 2004 requests within seven days, establishing a deadline of May 7, 2026. *Id*. Third, respondents produced no documents by May 7, 2026. The documents were not produced until May 12, 2026, five days after the deadline, and only after the Trustee filed the Motion to Enforce. ECF No. 286, Ex. 5.

### 2. Mitchell and Petitioning Creditors have not rebutted the finding of civil contempt

"After the movant has shown a prima facie case, the respondent can defend against it by showing a present inability to comply with the subpoena or order." *Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 401 (5th Cir. 1987). "The respondent may avoid a contempt finding by establishing that it has substantially complied with the order or has made reasonable efforts to comply." *In re Brown*, 511 B.R. 843, 849 (Bankr. S.D. Tex. 2014). "The court also considers good faith, or lack thereof." *M.D. v. Abbott*, 119 F.4th 373, 384 (5th Cir. 2024) (citing *Whitfield v. Pennington*, 832 F.2d 909, 914-15 (5th Cir. 1987)).

Mitchell claims that technical issues prevented timely document production: technical issues downloading documents from the Petitioning Creditors (May 2-4, 2026), technical issues compiling his own documents (May 4-8, 2026), and travel to a wedding (May 8-11, 2026). ECF No. 257. These assertions do not excuse non-compliance with a clear court order for several reasons. First, Mitchell did not inform the Trustee's counsel of the technical issues before the compliance deadline. Nor did Mitchell provide a reasonable explanation of why he chose not to reach out to either the Court or the Trustee to communicate his alleged inability to comply with the Turnover Order before the compliance deadline.

Second, the technical issues he describes (downloading documents, compiling documents) are routine matters of a modern law practice that should have been redressed well before the deadline. And Mitchell had from April 30 to May 7 (seven days) to remedy the technical issues.

ECF No. 241. Third, Mitchell's decision to travel on a long-planned trip to a wedding does not excuse non-compliance with a court order. An attorney has a duty to ensure that court orders are complied with, even if it requires adjusting personal plans.

Finally, the fact that Mitchell eventually produced documents does not cure the contempt. The Court's Turnover Order required production by May 7, and Mitchell and Petitioning Creditors did not produce documents until May 12, after the Motion to Enforce was filed. *See* ECF No. 241; ECF No. 257, at 2, ¶¶ 2–5; ECF No. 286-1. In any event, the document production did not produce all the documents required by the Turnover Order. *See* ECF No. 241; ECF No. 286-5. For example, the Turnover Order required Mitchell, on behalf of the Petitioning Creditors, to produce all documents requested in the Bankruptcy Rule 2004 request. ECF No. 241. The request for production included "[a]ll Documents, including but not limited to bank statements, wire confirmations, check copies, and transfer confirmations, evidencing the transfer of funds from" the Petitioning creditors to Debtors. *See e.g.*, ECF No. 208 at 11, ¶ 6. No such documents evidencing transfer of funds were produced despite that the Proofs of Claim asserted that funds were transferred from the Petitioning Creditors to Debtors. ECF No. 286-5; *Claims Register*, Claims 6-1, 7-1, 8-1. And Mitchell did not explain why such documents were not made available. The documents that were eventually produced (payment confirmations from Texas Excel Property Management, check images, and promissory notes) did not support the Petitioning Creditors' claims. ECF No. 286, Ex. 5. Notably, these documents showed payments to the Petitioning Creditors, not evidence that the Petitioning Creditors had advanced funds to the Debtors. *See id.* To establish that the Petitioning Creditors had valid claims, they would need to show that they had transferred funds to the Debtors. *See* 11 U.S.C. §§ 101(5), (12). The documents produced show the opposite: that the Debtors (or entities associated with them) made payments to the Petitioning Creditors. ECF No. 286, Ex. 5. This Court does not

find that Mitchell or the Petitioning Creditors "substantially complied with" or "has made reasonable efforts to comply" with the Turnover Order by making the late and incomplete document production. *In re Brown*, 511 B.R. at 849.

In sum, Mitchell's explanation suggests a lack of diligence and good faith in complying with the Court's Turnover Order. He did not begin compiling documents until May 4, did not resolve technical issues until May 11, and did not produce documents until May 12, after the Motion to Enforce was filed. This unreasonable lack of diligence does not rebut the Trustee's prima facie showing of contempt. Furthermore, Mitchell and the Petitioning Creditors' attempted withdrawal of the Motions to Quash is ineffective. ECF No. 253. The Court had already ruled on and denied the Motions to Quash on April 30, 2026. ECF No. 241. A motion cannot be withdrawn after it has already been ruled on.

Because the Trustee showed that each element of civil contempt is met and Mitchell and Petitioning Creditors did not demonstrate a valid defense for their failure to comply with the Turnover Order, the Court finds that the Petitioning Creditors and Mitchell are in contempt of the Turnover Order. Mitchell and Petitioning Creditors shall therefore be liable for the reasonable attorney fee's incurred by the Trustee in attempting to enforce compliance with the Turnover Order, including fees incurred in connection with the Motion to Enforce and the Trustee's supplement to the Motion to Enforce.

### C.  Mitchell violated Rule 11(b) by submitting motions containing fabricated authority

#### 1.  Rule 11(b) requirements and standards

Rule 11(b), made applicable to bankruptcy proceedings through Bankruptcy Rule 9011, requires that before filing or presenting a paper to the court, the signer must conduct a reasonable inquiry into the factual and legal basis for the submission. FED. R. BANKR. P. 9011(b). *See also*

*Cadle Co. v. Pratt* (*In re Pratt*), 524 F.3d 580, 586 (5th Cir. 2008) ("'Rule 9011 is substantially identical to Federal Rule of Civil Procedure 11,' therefore, we may refer to Rule 11 jurisprudence when considering sanctions under Rule 9011."). Specifically, Rule 11(b) mandates that legal contentions must be warranted by existing law or constitute a nonfrivolous extension of existing law, and factual contentions must have evidentiary support or, if specifically identified, be likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. FED. R. BANKR. P. 9011(b). "'[T]he standard under which the attorney is measured [under Rule 11] is an objective, not subjective, standard of reasonableness under the circumstances.' Accordingly, an attorney's good faith will not, by itself, protect against the imposition of Rule 11 sanctions." *Jenkins v. Methodist Hosps.*, 478 F.3d 255, 264 (5th Cir. 2007) (citations omitted).

Additionally, and as expressly laid out in S.D. Tex. General Order 2025-04:

Rule 11 of the Federal Rules of Civil Procedure requires that an attorney or self-represented litigant certifies their claims, defenses, and other legal contentions are warranted by existing law and the factual contentions have evidentiary support. Attorneys and self-represented litigants are cautioned against submitting to the Court any pleading, written motion, or other paper drafted using generative artificial intelligence (e.g., ChatGPT, Harvey.AI, generative AI services) without checking the submission for accuracy as certain technologies may produce factually or legally inaccurate content and should never replace the lawyer's independent legal judgment.

S.D. Tex. General Order 2025-04 also clarifies that an attorney may "be held responsible for the contents of that filing under Rule 11, regardless of whether generative artificial intelligence drafted any portion of that filing." S.D. Tex. Gen. Order 2025-04 (citing FED. R. CIV. P. 11(c)).

### 2. Mitchell submitted fabricated citations and quotations

The Court finds that Mitchell submitted the Motions to Quash containing multiple fabricated quotations, citations to non-existent authority, and misleading descriptions of authority. These false citations and quotations were not incidental errors but were central to Mitchell's

primary legal argument that Bankruptcy Rule 2004 examination is barred when litigation is merely contemplated. *See e.g.*, ECF No. 218, at 2, ¶ 2. The fabricated quotations and citations to non-existent authorities are reflected below in Table I.

| TABLE I | | |
|---|---|---|
| **Document** | **Citation and/or Quotation** | **Actual Finding** |
| | | |
| Petitioning Creditors Motion to Quash at ¶ 6 | Courts routinely quash or narrow Rule 2004 requests that amount to a "premature and unauthorized substitute for formal discovery," *In re Dinnubilo*, 177 B.R. 932, 939-40 (E.D. Cal. 1993). | **Non-existent Quotation**<br><br>The direct quotation does not appear in *Dinnubilo*. Trustee's counsel has not been able to locate this quotation in another published opinion. Setting aside the nonexistent quotation, the case is distinguishable and does not support the hallucinated proposition for which it is cited, nor is it an appropriate paraphrase of any portion of the case text. |
| | | |
| Petitioning Creditors Motion to Quash at ¶ 6 | or that impose disproportionate burdens on non-debtor third parties. *See In re Table Talk, Inc.* 51 B.R. 143, 146 (Bankr. D. Mass 1985). | **Misrepresentation of Authority**<br>There is no discussion of this topic in *Table Talk*. Neither the word "burden" nor "disproportionate" appear in the opinion, nor is this an appropriate paraphrase of any portion of the case text.<br><br>In fact, *Table Talk* rejects the exact argument being made by the Petitioning Creditors. In that case, the party objected "to the use of a Rule 2004 examination as a 'pre-litigation discovery device' which would give the Trustee 'an unwarranted tactical advantage.'" *Table Talk*, 51 B.R. at 145. At the pinpoint cite in the Petitioning Creditors' Motion to Quash, the Court rejects this argument. *Id*. at 146. |
| | | |
| Petitioning Creditors Motion to Quash at ¶ 8 | Rule 2004 cannot be weaponized to extract full blown litigation discovery | **Non-existent Quotation**<br><br>The direct quotation does not appear |

| TABLE I | | |
|---|---|---|
| **Document** | **Citation and/or Quotation** | **Actual Finding** |
| | outside those procedural protections. *See In re Symington*, 209 B.R. 678, 683 (Bankr. D. Md. 1997) ("[W]hen a specific dispute has matured to the point where it could be adjudicated through a contested matter or adversary proceeding, Rule 2004 examination is not an appropriate substitute for formal discovery."). | in *Symington*. Trustee's counsel has not been able to locate this quotation in another published opinion. Setting aside the nonexistent quotation, the case is distinguishable and does not support the hallucinated proposition for which it is cited, nor is it an appropriate paraphrase of any portion of the case text. |
| | | |
| Mitchell Motion to Quash at ¶ 8 | Courts consistently hold that the Rule "may not be used as a device for discovery in anticipated litigation" once the parties' relationship has ripened into an adversarial dispute. *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985); *see also In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996). | **Non-existent Quotation**<br><br>The direct quotation does not appear in either the *Wilcher* or the *Bennett Funding Group* cases cited.<br><br>The pinpoint citation in *Wilcher* includes the inverse proposition—the often-used phrase that Rule 2004 "can legitimately be in the nature of a 'fishing expedition.'" *Wilcher*, 56 B.R. at 433 (citing *In re Vantage Petroleum Corp.*, 34 B.R. 650, 651 (Bankr. E.D.N.Y 1983)). The pinpoint cite in *Bennett Funding Group* cites *Wilcher* for the "fishing expedition" language. *Bennett Funding Grp. Inc.*, 203 B.R. at 28.<br><br>"It is clear that Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs." *Id.* at 434. This is the only place in the case text in which the word "device" appears. The case does not include the phrase "anticipated litigation.<br><br>"*Bennett Funding Group* discusses the uses of Rule 2004 after an adversary proceeding has been filed, but there is |

| TABLE I | | |
|---|---|---|
| **Document** | **Citation and/or Quotation** | **Actual Finding** |
| | | no possible reading of this case positing that Rule 2004 cannot be used for "discovery in anticipated litigation. |
| | | |
| Mitchell Motion to Quash at ¶ 10 | A court may for good cause issue a protective order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).  The moving party need not await a motion to compel.  *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, | **Misrepresentation of Authority**<br><br>Mitchell cites *Shields* for the proposition that a party may move for a protective order before there is a motion to compel filed. *Shields* does not discuss this legal question. The holding in *Shields* is that<br><br>"When a party is compelled to disclose privileged work product and does so only after objecting and taking other reasonable steps to protect the privilege, one court's disregard of the privileged character of the material does not waive the privilege before another court." *Shields*, 864 F.2d at 382.<br><br>There is a passing reference to the fact that production of the work product was compelled in the prior litigation pursuant to a protective order. *Id.* at 381-82.  However, in the *Shields* case itself, the appeal was from a motion in limine. *Id.* at 381. There is no discussion about a protective order. |
| | | |
| Mitchell Motion to Quash at ¶ 14 | The attorney-client privilege protects confidential communications between an attorney and client made for the purpose of seeking or providing legal advice. *In re Grand Jury Subpoena*, 870 F.2d 343, 346 (5th Cir. 1989). | **Non-Existent Case**<br><br>This reporter citation is for a case in a different circuit, with a different name, on a different topic.  The proper citation is:<br><br>*Grubbs v. Norris*, 870 F.2d 343 (6th Cir. 1989)<br><br>**Misrepresentation of Authority** |

| TABLE I | | |
|---|---|---|
| **Document** | **Citation and/or Quotation** | **Actual Finding** |
| | | The name and circuit do not appear to be mere typos because the *Grubbs* opinion concerns a government entity's right to intervene in a civil rights action pursuant to Fed. R. Civ. P. 24(a)(2). The word "privilege" does not appear a single time in *Grubbs*. |
| | | |
| Mitchell Motion to Quash at ¶ 14 | This privilege is absolute unless waived by the client, not the attorney. *United States v. Zolin*, 491 U.S. 554, 562 (1989). | **Misrepresentation of Authority**<br><br>*Zolin* is about the crime-fraud exception to the attorney-client privilege. Therefore, it is an example of why the privilege is *not* absolute.<br><br>There is a passing reference to the lower courts' factual finding that privilege had not been waived through an inadvertent disclosure, but the Supreme Court states "these findings are not at issue here." *Zolin*, 491 U.S. at 563.<br><br>The pinpoint cite in Mitchell's Motion discusses the crime-fraud exception and reads as follows:<br><br>Questions of privilege that arise in the course of the adjudication of federal rights are "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed. Rule Evid. 501. We have recognized the attorney-client privilege under federal law, as "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Although the underlying rationale for the privilege has changed over time, see 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961), courts long |

| TABLE I | | |
|---|---|---|
| **Document** | **Citation and/or Quotation** | **Actual Finding** |
| | | have viewed its central concern as one "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U. S., at 389. That purpose, of course, requires that clients be free to "make full disclosure to their attorneys" of past wrongdoings, *Fisher v. United States*, 425 U.S. 391, 403 (1976), in order that the client may obtain "the aid of persons having knowledge of the law and skilled in its practice," *Hunt v. Blackburn*, 128 U. S. 464, 470 (1888). <br><br> The attorney-client privilege is not without its costs. *Cf. Trammel v. United States*, 445 U.S. 40, 50 (1980). "[S]ince the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose." *Fisher*, 425 U. S., at 403. The attorney-client privilege must necessarily protect the confidences of wrongdoers, but the reason for that protection — the centrality of open client and attorney communication to the proper functioning of our adversary system of justice — "ceas[es] to operate at a certain point, namely, where the desired advice refers not to prior wrongdoing, but to future wrongdoing." 8 Wigmore, § 2298, p. 573 (emphasis in original); *see also Clark v. United States*, 289 U.S. 1, 15 (1933). It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the "seal of secrecy," *ibid.*, between lawyer and client does not extend to communications "made for the purpose |

| TABLE I | | |
|---|---|---|
| **Document** | **Citation and/or Quotation** | **Actual Finding** |
| | | of getting advice for the commission of a fraud" or crime. *O'Rourke v. Darbishire*, [1920] A. C. 581, 604 (P. C.). |
| | | |
| Mitchell Motion to Quash at ¶ 16 | The Trustee bears the burden of demonstrating that privilege does not apply before any production can be ordered. *United States v. Zolin*, 491 U.S. at 572. | The cited authority discusses the boundaries of *in camera* review of privileged materials by the court, **not** the production of such materials to the requesting party. The *in camera* review is appropriate when the facts support a "good faith belief…that *in camera* review of the materials may reveal evidence to establish the claim that the crime- fraud exception applies." *Id.* at 572.<br><br>The pinpoint cite in Mitchell's Motion reads as follows:<br><br>In fashioning a standard for determining when *in camera* review is appropriate, we begin with the observation that "in camera inspection . . . is a smaller intrusion upon the confidentiality of the attorney-client relationship than is public disclosure." Fried, Too High a Price for Truth: The Exception to the Attorney-Client Privilege for Contemplated Crimes and Frauds, 64 N. C. L. Rev. 443, 467 (1986). We therefore conclude that a lesser evidentiary showing is needed to trigger *in camera* review than is required ultimately to overcome the privilege. *Ibid.* The threshold we set, in other words, need not be a stringent one.<br><br>We think that the following standard strikes the correct balance. Before engaging in *in camera* review to determine the applicability of the |

| TABLE I | | |
|---|---|---|
| **Document** | **Citation and/or Quotation** | **Actual Finding** |
| | | crime-fraud exception, "the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person," *Caldwell v. District Court*, 644 P. 2d 26, 33 (Colo. 1982), that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.<br><br>Once that showing is made, the decision whether to engage in *in camera* review rests in the sound discretion of the district court. The court should make that decision in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through in camera review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply. The district court is also free to defer its *in camera* review if it concludes that additional evidence in support of the crime-fraud exception may be available that is not allegedly privileged, and that production of the additional evidence will not unduly disrupt or delay the proceedings. |
| | | |

### 3. Mitchell's Explanations Do Not Excuse the Violation

As justification, Mitchell asserts that he "has the 'Precision' version of Westlaw, which, upon information and believe [sic], does incorporate AI capabilities." ECF No. 272, at 2, ¶ 6. Mitchell further claims that he "has never encountered issues with Westlaw's AI feature in the

past." *Id.* at 1, ¶ 2. Lastly, Mitchell asserts that "[u]pon information and belief, the citations included in the Motions to Quash were taken from a prior filing made several years ago." *Id.*

Mitchell's suggestion that the "Precision" version of Westlaw, which is a generative AI tool offered by Westlaw, should be given different treatment from non-legal AI tools demonstrates Mitchell's disregard for the General Orders of the Southern District of Texas. S.D. Tex. General Order 2025-04 expressly cautions lawyers against using generative AI services without checking accuracy, and does not differentiate between legal AI services and general AI services. S.D. Tex. Gen. Order 2025-04. In fact, S.D. Tex. General Order 2025-04 mentions Harvey.AI, a legal specific AI service, as an example of an AI tool that should be used with caution. *Id.*

Mitchell also explained that the legal citations in his Motions to Quash resulted from his use of a prior template but admitted that they were misleading and inaccurate. June 10, 2026 H'rg (Mitchell testifying).  S.D. Tex. General Order 2025-04 provides that "[a]ny attorney or self-represented litigant who signs a pleading, written motion, or other paper submitted to the Court will be held responsible for the contents of that filing under Rule 11, *regardless of whether generative artificial intelligence drafted any portion of that filing.*" S.D. Tex. Gen. Order 2025-04 (emphasis added). Thus, whether the citations were generated by artificial intelligence, copied from prior filings without verification, or typed manually, the fundamental problem remains: Mitchell submitted citations and quotations that he had not verified and that do not support his legal contentions. This is the precise conduct prohibited by Rule 11(b).

As such, the Court finds that Mitchell violated Rule 11(b) when he submitted the Motions to Quash, containing multiple fabricated quotations and citations to non-existent authority, without verifying the accuracy of the legal authorities and assertions in the Motions to Quash.

**4. The Safe Harbor Does Not Apply**

Rule 11(c)(2) provides a twenty-one-day safe harbor for parties who withdraw or correct a filing in response to a motion for sanctions. Specifically, Rule 11(c)(2) provides that a "motion for sanctions . . . must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service." However, Rule 11(c)(3) provides that "[o]n its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." At the April 30, 2026 hearing held for the Motion to Quash, the Court questioned Mitchell about potential inaccuracies contained in the Motions to Quash and *sua sponte* issued a show cause order that required Mitchell to demonstrate to the Court (1) why he has not violated Rule 11(b); and (2) why he should not be sanctioned pursuant to Rule 11 and this Court's inherent authority. ECF No. 242. Thus, the Court proceeded under Rule 11(c)(3) by issuing its *sua sponte* show cause order.

Rule 11(c)(2) refers to a *motion* for sanctions and creates a twenty-one-day safe harbor in that context. But Rule 11(c)(3) refers to a court's own show cause order and does not provide for a twenty-one-day safe harbor. Thus, the twenty-one-day safe harbor does not apply to a court's own show cause order it issues under Rule 11(c)(3). *Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995) ("Sanctions may be ordered if the court, on its own initiative, enters an order describing the offending conduct and directing the offending parties to show cause why Rule 11 has not been violated. This sub-section contains no 'safe harbor' provision."). Here, because the Court is proceeding under its show cause order, it can find that Mitchell violated Rule 11(b) and order appropriate sanctions, notwithstanding the lack of a twenty-one-day safe harbor.

However, sanctions under Rule 11 "may include nonmonetary directives; an order to pay a penalty into court; or, *if imposed on motion* and warranted for effective deterrence, *an order*

*directing payment to the movant of part or all of the reasonable attorney's fees* and other expenses directly resulting from the violation. FED. R. CIV. P. 11(c)(4) (emphasis added). Thus, as the Fifth Circuit has made clear, the Court cannot award attorney's fees as a sanction for a Rule 11(b) violation unless imposed by a motion and the violating attorney is afforded the opportunity to comply with the twenty-one-day safe harbor. *See Thornton v. GMC*, 136 F.3d 450, 455 (5th Cir. 1998) ("where sanctions are imposed under Rule 11(c)(1)(B) by a district court on its own initiative, [] the award of attorney's fees . . . [does not] constitute a valid sanction"); *Marlin v. Moody Nat'l Bank N A*, 533 F.3d 374, 379 (5th Cir. 2008).

Nonetheless, the Court retains its inherent authority to award reasonable attorney's fees as a sanction if it finds that an attorney or party engaged in bad faith. *Elliott v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995). Furthermore, the Court can sanction conduct under its inherent power even if that same conduct would fall within the scope of Rule 11(b). See *In re Parsley*, 384 B.R. 138, 178 (Bankr. S.D. Tex. 2008) (rejecting the argument that "the Court may not exercise its inherent power when a Rule exists that may arguably regulate the same conduct"); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) (A federal court is not "forbidden [from] sanctioning bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules."). As explained *infra*, the Petitioning Creditors and Mitchell acted in bad faith by filing the Motions to Quash, without verifying the accuracy of the assertions therein, as part of their broader scheme to abuse the bankruptcy process and therefore, a sanction in the form of reasonably attorney fees is appropriate. Additionally, as a sanction under Rule 11, Mitchell shall register and obtain six hours of continuing education from the State Bar of Texas on the use of generative AI in the courts.

**D. Sanctions Are Appropriate Under The Court's Inherent Power And Section 105(a)**

1.  **Inherent Power Sanctions and 105(a)**

The Supreme Court in *Chambers v. NASCO* held that federal courts have inherent power to sanction parties and their attorneys. *Chambers v. NASCO, Inc.*, 501 U.S. at 53. A federal court's inherent power to impose attorney's fees as a sanction is limited "to cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders." *Id.* at 47. A court may also order sanctions pursuant to applicable procedural rules but such rules do "not repeal or modify existing authority of federal courts to deal with abuses . . . under the court's inherent power." *Id.* at 48. Indeed, the "inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." *Id.* A court ordinarily should rely on relevant rules and statues, rather than the inherent power, but "if in the informed discretion of the court, neither the statute nor the rules are up to the task, the court may safely rely on its inherent power." *Id.* at 53.

The principles in Chambers regarding a court's inherent power to award attorney fees as sanctions are "equally applicable to the bankruptcy court." *Matter of Case*, 937 F.2d 1014, 1023 (5th Cir. 1991). Specifically, 11 U.S.C. § 105(a) "grants bankruptcy courts broad authority to implement the Bankruptcy Code and prevent abuses of bankruptcy process, powers inherent to district courts, as the Supreme Court recognized in Chambers." *In re Osborne*, 375 B.R. 216, 226 (Bankr. M.D. La. 2007) (collecting cases); *Schermerhorn v. CenturyTel, Inc.* (*In re SkyPort Glob. Communs., Inc.*), 528 B.R. 297, 322 (S.D. Tex. 2015). Section 105(a) authorizes a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title 11 of the United States Code]. 11 U.S.C. § 105(a). Section 105(a) further provides that, "[n]o provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any

determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." *Id.*

For a bankruptcy court to sanction an attorney pursuant to its inherent power under § 105, it must make a specific finding that the party being sanctioned acted in bad faith. *In re Crocheter*, 382 B.R. 311, 326 (S.D. Tex. 2007) (citing *Crowe v. Smith*, 261 F.3d 558, 563 (5th Cir. 2001))*, rev'd on other grounds* 297 F. App'x 382 (5th Cir. 2008).  "A court may assess attorney's fees under its inherent powers when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or has defiled the 'very temple of justice.'" *Matta v. May*, 118 F.3d 410, 416 (5th Cir. 1997).  A bankruptcy court can use its inherent authority to sanction both a party and its attorney. *Carroll v. Abide* (*In re Carroll*), 850 F.3d 811, 815 (5th Cir. 2017) ("Federal courts have inherent powers which include the authority to sanction a party or attorney when necessary to achieve the orderly and expeditious disposition of their dockets.").

### E.  Sanctions Against The Petitioning Creditors And Mitchell Are Appropriate

The Petitioning Creditors and Mitchell engaged in a pattern of conduct throughout this proceeding that demonstrates a bad faith abuse of the bankruptcy process. The Petitioning Creditors, through Mitchell, filed involuntary petitions asserting proofs of claim totaling to approximately $2.5 million. *See Claims Register*, Claims 6-1, 7-1 and 8-1. The involuntary petitions were filed shortly after the Debtors' previous chapter 11 case was dismissed with prejudice. As explained *supra*, there were significant and troubling inconsistencies between the involuntary petitions, the Debtors' schedules, and the Proofs of Claim filed by the Petitioning Creditors which prompted the Trustee to issue Bankruptcy Rule 2004 requests to investigate the legitimacy of the Proofs of Claim. Instead of complying with the Bankruptcy Rule 2004 requests,

the Petitioning Creditors and Mitchell filed Motions to Quash that were grounded on inaccurate legal arguments that were not verified. ECF Nos. 218–221.

After the Court denied the Motions to Quash and ordered the Petitioning Creditors and Mitchell to turnover all the requested information, they failed to do so. ECF No. 241. Not only was the Petitioning Creditors' and Mitchell's turnover of documents untimely, but it was wholly deficient because they did not produce evidence of transfer of funds from the Petitioning Creditors to Debtors as requested in the Bankruptcy Rule 2004 requests. ECF No. 286, Ex. 5. And in a last-ditch effort to avoid contempt of the Court's Turnover Order and responsibility for their meritless Motions to Quash, the Petitioning Creditors withdrew their Proofs of Claim and Mitchell, on behalf of himself and the Petitioning Creditors, attempted to withdraw the Motions to Quash. ECF No. 253.

The Trustee explicitly stated in her Omnibus Response to the Petitioning Creditors' and their Counsel's Motion to Quash that "[t]he purpose of the Rule 2004 requests for production is to determine if the Trustee has a basis to object to the Petitioning Creditors' claims and to investigate potential fraud on the Court in their filing the involuntary petitions." ECF No. 229, at 1–2, ¶ 1. The Trustee concluded that the Petitioning Creditors "do not hold valid claims and have no standing in these cases." ECF No. 229, at 3, ¶ 4. Thus, the Petitioning Creditors and Mitchell were on notice of the allegations against them and had the opportunity to rebut them by producing documents responsive to the Bankruptcy Rule 2004 requests to show that the Proofs of Claims were legitimate. *See* ECF No. 229. But the Petitioning Creditors did not do that. Instead, the Petitioning Creditors, through Mitchell, withdrew their Proofs of Claim without ever producing sufficient evidence that they ever had valid claims. ECF No. 258. The Petitioning Creditors' assertion that the withdrawal of the Proofs of Claim totaling approximately $2.5 million was for

"economic reasons not based on the merits" is not credible or supported by evidence. *See* ECF No. 258, at 1, ¶ 2.

The withdrawal, in light of the Trustee's allegations and Bankruptcy Rule 2004 requests, effectively serves as an admission that the Proofs of Claim lacked evidentiary support and that the Petitioning Creditors are not creditors of the Debtors. The Petitioning Creditors lacked standing to file involuntary petitions because they did not have valid claims and were not creditors of the Debtors. *See* 11 U.S.C. § 303(b)(1) (providing that an involuntary petition against a non-partnership debtor may be filed only by creditors or an indenture trustee); §§ 101(10), 101(5).

In sum, the Petitioning Creditors filed the Proofs of Claim without evidentiary support, filed frivolous Motions to Quash the Bankruptcy Rule 2004 requests, failed to comply with the Court's Turnover Order, and ultimately withdrew the Proofs of Claim without ever providing supporting evidence. This pattern of conduct demonstrates that the Proofs of Claim were filed as part of a scheme to manufacture standing in this bankruptcy case that the Petitioning Creditors would not otherwise have possessed. As such, the Court finds that the Petitioning Creditors acted in bad faith and abused the bankruptcy process.

The Court further finds that Mitchell acted in bad faith and abused the bankruptcy process by facilitating the Petitioning Creditors' scheme. Mitchell filed the Proofs of Claims and Motions to Quash on behalf of the Petitioning Creditors and, as an experienced bankruptcy attorney, understood that the baseless Proofs of Claim conferred standing that the Petitioning Creditors would not otherwise possess. When confronted with the potential impropriety, Mitchell filed a frivolous Motion to Quash, failed to comply with the Court's Turnover Order, and withdrew the Proofs of Claim without ever producing adequate evidentiary support.

Accordingly, the Court finds that both the Petitioning Creditors and Mitchell acted in bad faith and that, as a sanction under the Court's inherent authority and Section 105(a), Petitioning Creditors and Mitchell shall pay the Trustee's reasonable attorney's fees directly resulting from their bad faith conduct.

**F. The Trustee's Attorney's Fees Are Reasonable And Directly Resulted From The Petitioning Creditors' And Mitchell's Misconduct**

The Trustee's counsel submitted a time entry reflecting 44.6 hours of attorney and paralegal time, totaling $29,877.00 in fees. ECF No. 284-18. These fees were incurred in connection with the following matters: (1) reviewing the Petitioning Creditors' Proofs of Claim (3.40 hours, $2,593.00); (2) filing objections to the motion for continuance of a Bankruptcy Rule 9019 hearing filed by Mitchell and the Petitioning Creditors (2.90 hours, $2,100.50); (3) preparing Bankruptcy Rule 2004 discovery requests (9.30 hours, $4,721.50); (4) reviewing, analyzing, and responding to the Motions to Quash (20.20 hours, $13,466.00); (5) preparing the Motion to Enforce (3.00 hours, $2,385.00); and (6) preparing the Trustee's Omnibus Reply in support of sanctions (5.80 hours, $4,611.00). *Id.*

The Petitioning Creditors' frivolous Proofs of Claim, filed through Mitchell, necessitated the Trustee's counsel's review of those claims and the subsequent Bankruptcy Rule 2004 discovery. The frivolous Motions to Quash required the Trustee's counsel to expend time responding to and objecting to those motions. The Petitioning Creditors' and Mitchell's failure to comply with the Turnover Order compelled the Trustee to file her Motion to Enforce and to request sanctions. Moreover, absent the Petitioning Creditors' frivolous Proofs of Claim, they would not have had standing to participate in this proceeding or to be heard on any motion brought related to Bankruptcy Rule 9019. Moreover, the Court finds that the total amount of fees requested, $29,877.00, is reasonable in light of the various motions filed by Mitchell and the Petitioning

Creditors, the numerous pleadings the Trustee was required to file in response thereto, and the multiple hearings for which the Trustee and her counsel prepared for and in which they participated.

As such, the Court finds that the Trustee incurred $29,877.00 of reasonable legal fees as result of Mitchell and the Petitioning Creditors' bad faith conduct.

## IV.   CONCLUSION

For the reasons stated herein, the Trustee's Motion to Enforce at ECF No. 254 and Supplemental Motion at ECF No. 263 are GRANTED. The Court finds that Mitchell violated Federal Rule of Civil Procedure 11(b), as made applicable by Bankruptcy Rule 9011, by submitting the Motions to Quash at ECF Nos. 218, 219, 220, and 221. As a sanction for his Federal Rule of Civil Procedure 11(b) violation, Mitchell shall register and obtain six hours of continuing legal education from the State Bar of Texas on the use of generative AI in the courts and file a certificate of compliance with the Clerk of Court no later than **Monday, August 31, 2026**. The Court finds that the Petitioning Creditors and Mitchell violated the Court's April 30, 2026, Order at ECF No. 241 denying the Motions to Quash by failing to produce documents responsive to the Trustee's Bankruptcy Rule 2004 requests by the May 7, 2026, deadline. The Court finds that the Petitioning Creditors and Mitchell are in civil contempt of the April 30, 2026, Order. The Court finds that Mitchell and the Petitioning Creditors engaged in bad faith conduct that abused the judicial process and the bankruptcy system, warranting sanctions under the Court's inherent power and Section 105 of the Bankruptcy Code. The Petitioning Creditors and Mitchell are JOINTLY AND SEVERALLY LIABLE to the Trustee for the payment of attorneys' fees and costs in the amount of $29,877.00, representing reasonable compensation for the Trustee's counsel's time and expenses incurred in: (1) reviewing the Petitioning Creditors' Proofs of Claim ($2,593.00); (2)

filing objections to the Motion for Continuance of a Bankruptcy Rule 9019 hearing filed by Mitchell and the Petitioning Creditors ($2,100.50); (3) preparing Bankruptcy Rule 2004 discovery requests ($4,721.50); (4) reviewing, analyzing, and responding to the Motions to Quash ($13,466.00); (5) preparing the Motion to Enforce ($2,385.00); and (6) preparing the Trustee's Omnibus Reply in support of sanctions ($4,611.00). The Petitioning Creditors and Mitchell shall pay the aforementioned sum of $29,877.00 to the Trustee no later than **Monday, August 31, 2026**. Payment shall be made by certified check or money order payable to "Allison D. Byman, Chapter 7 Trustee" and delivered to counsel for the Trustee at Porter Hedges LLP, 1000 Main Street, 36th Floor, Houston, Texas 77002.

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

**SIGNED Tuesday, July 14, 2026**

**Eduardo V. Rodriguez**
**Chief United States Bankruptcy Judge**