United States Bankruptcy Court
Southern District of Texas

**ENTERED**

November 04, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 25-34507** |
| **ROSSLYN2016, LLC** | § | |
| **and** | § | |
| **TEXAS ESENCIA 2019 LLC** | § | |
| **and** | § | |
| **TIMBERS2020 LLC,** | § | |
| | § | |
| **Debtors.** | § | **Jointly Administered** |
| | § | **CHAPTER 7** |

**MEMORANDUM OPINION**

Pending before the Court are the (1) "Emergency Motion to Enforce Settlement Order" ("*Motion to Enforce*") filed by Morgan Stanley Private Bank, National Association ("*Morgan Stanley*") on June 8, 2026, at Dkt. No. 288, and (2) "Motion to Declare Kalkan a Vexatious Litigant and Impose Pre-Filing Injunction" ("*Vexatious Litigant Motion*," and together with the Motion to Enforce, the "*Motions*") filed by Morgan Stanley on June 16, 2026, at Dkt. No. 295. With respect to the Motion to Enforce, Dr. Fercan E. Kalkan ("*Dr. Kalkan*") filed a "Response and Objection to Morgan Stanley Private Bank, National Association's Emergency Motion to Enforce Settlement Order" ("*Response to the Motion to Enforce*") on June 12, 2026, at Dkt. No. 293, and Morgan Stanley filed a "Reply in Support of Motion to Enforce Settlement Order" on July 22, 2026, at Dkt. No. 323. With respect to the Vexatious Litigant Motion, Dr. Kalkan filed an "Objection to Morgan Stanley's Motion to Declare Kalkan a Vexatious Litigant and Impose Pre-Filing Injunction" on June 22, 2026, at Dkt. No. 298, and Morgan Stanley filed a "Reply in Support of Morgan Stanley's Motion to Declare Kalkan a Vexatious Litigant and Impose Pre-Filing Injunction" on June 22, 2026, at Dkt. No. 324. The Court held a hearing on the Motions on July 29, 2026.

Having considered the Motions, responses, replies, and materials in the record, for the reasons stated herein, the Vexatious Litigant Motion is GRANTED, and the Motion to Enforce is DENIED IN PART AS MOOT.

## I. PROCEDURAL HISTORY

The instant jointly administered chapter 7 cases involve three debtors: Rosslyn2016, LLC, Texas Esencia 2019 LLC, and Timbers2020 LLC (collectively, "*Debtors*").[1] Dkt. No. 10. Dr. Kalkan was the individual principal of each of the Debtors. Dkt. No. 298, ¶ 4. In 2025, Morgan Stanley foreclosed on three apartment properties[2] in Harris County, Texas (the "*Properties*") formerly owned by the Debtors. *Id.* Dr. Kalkan guaranteed the loans made by Morgan Stanley secured by the Properties. *Id.*

On May 20, 2026, this Court entered its "Order (I) Authorizing and Approving Settlement Agreement, and (II) Granting Related Relief" ("*Settlement Order*") at Dkt. No. 268, approving a settlement between Morgan Stanley and Allison D. Byman, Chapter 7 Trustee ("*Trustee*") that fully released and permanently enjoined creditors and parties-in-interest, including Dr. Kalkan, from pursuing wrongful foreclosure claims against Morgan Stanley with respect to foreclosure of the Properties, and further released all of the Debtors' and their estates' other claims and causes of action against Morgan Stanley, including derivative claims. Dkt. No. 268, ¶¶ 4–5.

## II. JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction

---

[1] Each of the Debtors' cases are styled as follows: *In re Rosslyn2016, LLC*, Case No. 25-34507; *In re Tex. Esencia 2019, LLC*, Case No. 25-34508; *In re Timbers2020 LLC*, Case No. 25-34510.

[2] The subject apartment properties are in Harris County, Texas, and are fully described in the Settlement Order (defined below). The subject properties are: (1) North Vista Apartments; (2) Timbers of Cranbrook; and (3) Northwest Pines Apartments. Dkt. No. 268, at 23–30.

of all civil proceedings arising under title 11, or arising in or related to cases under title 11." This proceeding arises in and relates to the Debtors' chapter 7 cases. Further, this is a core proceeding pursuant to 28 U.S.C. § 157(b). Section 157(b)(1) provides that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . . and may enter appropriate orders and judgments." Motions to enforce this Court's prior orders and impose sanctions on a party for vexatious litigation conduct in relation to a bankruptcy case constitute core proceedings as "matters concerning the administration of the estate" under § 157(b)(2)(A). *Carroll v. Abide (In re Carroll)*, 850 F.3d 811, 815 (5th Cir. 2017); *see also Placid Refin. Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997).

Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Section 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." The Debtors' bankruptcy cases are pending in this Court. *E.g.*, Dkt. No. 1. Thus, this Court is the proper venue to adjudicate the instant Motions.

This Court has constitutional authority to enter a final order on the instant Motions. Article III permits bankruptcy courts to decide claims submitted to them by consent. *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 669 (2015). Such consent need not be express and may be implied from the conduct of the parties in litigating the claims before a bankruptcy court without objecting to its jurisdiction. *Id.* at 683–85. Morgan Stanley has expressly consented to the entry of a final order on the Vexatious Litigant Motion by this Court. Dkt. No. 295, ¶ 2. Further, neither Morgan Stanley nor Dr. Kalkan have objected to this Court's jurisdiction to enter final orders with respect to the instant Motions. Although the Motions at issue here do not involve "*Stern* claims"

per se, the principle of party consent curing any Article III concern applies. *Wellness Int'l Network*, 575 U.S. at 669, 683–85.

## III. BACKGROUND

For more than a year, Dr. Kalkan has contested Morgan Stanley's foreclosure of the Properties through prosecution of wrongful foreclosure claims. Dkt. No. 295, ¶ 3. However, any wrongful foreclosure claims were property of the Debtors' estates as former owners of the Properties, *infra* Part IV.A.2.b.ii., and the Settlement Order approved a settlement between Morgan Stanley and the Trustee that fully released and permanently enjoined creditors and parties-in-interest, including Dr. Kalkan, from pursuing wrongful foreclosure claims against Morgan Stanley with respect to foreclosure of the Properties. Dkt. No. 268, ¶¶ 4–5. Despite the Settlement Order, Dr. Kalkan has filed numerous lawsuits against Morgan Stanley. Dkt. No. 295, ¶ 12. The following table summarizes the litigation:

| Case No. | Style | Jurisdiction | Claim/Motion |
|---|---|---|---|
| 2025-07341 | *Rosslyn2016 LLC and Fercan E. Kalkan v. Morgan Stanley Private Bank, N.A.* | Harris County, Texas | TRO to enjoin foreclosure proceedings |
| 2025-07363 | *Rosslyn2016 LLC and Fercan E. Kalkan v. Morgan Stanley Private Bank, N.A.* | Harris County, Texas | TRO to enjoin foreclosure proceedings |
| 2025-07385 | *Texas Esencia 2019 LLC and Fercan E. Kalkan v. Morgan Stanley Private Bank, N.A.* | Harris County, Texas | TRO to enjoin foreclosure proceedings |
| 2025-07386 | *Timbers2020 LLC and Fercan E. Kalkan v. Morgan Stanley Private Bank, N.A.* | Harris County, Texas | TRO to enjoin foreclosure proceedings |

| Case No. | Style | Jurisdiction | Claim/Motion |
|---|---|---|---|
| 2025-44995 | *Rosslyn2016 LLC v. Morgan Stanley Private Bank, National Association* | Harris County, Texas | Wrongful foreclosure |
| 2025-44996 | *Timbers2020 LLC v. Morgan Stanley Private Bank, National Association* | Harris County, Texas | Wrongful foreclosure |
| 2025-44997 | *Texas Esencia 2019 LLC v. Morgan Stanley Private Bank, National Association* | Harris County, Texas | Wrongful foreclosure |
| 2026-03837 | *Dr. Fercan E. Kalkan v. Morgan Stanley Mortgage Capital Holdings LLC* | Harris County, Texas | Wrongful foreclosure |
| 2022-33737 | *Pablo Salamanca v. Fercan Kalkan, et al.* | Harris County, Texas | Motion for contempt |
| 25-31816 | *In re Texas Esencia 2019, LLC, et al.* | S.D. Tex. Bankruptcy Court | Wrongful foreclosure (dismissed) |
| 25-34507 | *In re Rosslyn2016 LLC, et al.* | S.D. Tex. Bankruptcy Court | Wrongful foreclosure (removed and consolidated) |
| 25-80418 | *In re ENKB-Monticello, LLC et al.* | S.D. Tex. Bankruptcy Court | Objection to Morgan Stanley's motion to clarify conf. order |
| 2026-37121 | *Dr. Fercan E. Kalkan v. Morgan Stanley Private Bank, National Association* | Harris County, Texas | Wrongful foreclosure and unjust enrichment |

*Id.*

Three of the lawsuits (Harris County Cause Nos. 2025-44995, 2025-44996, and 2025-44997) were functionally duplicative of existing lawsuits (Harris County Cause Nos. 2025-07341, 2025-07363, 2025-07385, and 2025-07386). *Id.* ¶ 13. Both sets of lawsuits alleged wrongful

foreclosure and sought temporary restraining orders to halt Morgan Stanley's foreclosures. *Id.* The second set was filed after temporary restraining orders in the first set expired. *Id.* Dr. Kalkan has recorded at least nine lis pendens against the Properties, all aimed at preventing sale of the Properties. *Id.* ¶ 14. Three lis pendens were recorded on August 21, 2025, three more were recorded on January 29, 2026, and a further three were recorded on June 3, 2026. *Id.*

On June 2, 2026, Dr. Kalkan filed yet another Texas state court lawsuit, Harris County Cause No. 2026-37121 (the "*June 2026 Lawsuit*"). *Id.* ¶ 15. In the June 2026 Lawsuit, Dr. Kalkan recycles the same wrongful foreclosure claim made by him and the Debtors in prior lawsuits. *Id.* In the Response to the Motion to Enforce, Dr. Kalkan stated that he "is prepared to amend his petition" if this Court determines he has pleaded an estate-owned claim. Dkt. No. 293, ¶ 13. Dr. Kalkan has admitted to knowing that the lis pendens recorded in association with his now-dismissed January 2026 lawsuit are a nullity because there is no underlying case, yet he has refused to release those lis pendens. *Id.* ¶¶ 3, 14.

## IV. ANALYSIS

The Vexatious Litigant Motion and Motion to Enforce raise related but distinct issues. The Court examines each in turn.

### A. Vexatious Litigant Motion

#### 1. Legal Standard

##### a. Authority to Declare a Litigant Vexatious and Impose Pre-Filing Injunctions

The Court's authority to impose sanctions, including pre-filing injunctions against vexatious litigants, derives from its inherent powers, the All Writs Act (28 U.S.C. § 1651), and 11 U.S.C. § 105. *Carroll*, 850 F.3d at 815. The Fifth Circuit has held that "[f]ederal courts have inherent powers which include the authority to sanction a party or attorney when necessary to

achieve the orderly and expeditious disposition of their dockets," *Scaife v. Associated Air Ctr. Inc.*, 100 F.3d 406, 411 (citations omitted), and that "[f]ederal courts also have authority to enjoin vexatious litigants under the All Writs Act, 28 U.S.C. § 1651." *Carroll*, 850 F.3d at 815 (citation omitted). Additionally, pursuant to 11 U.S.C. § 105, "a bankruptcy court can issue any order, including a civil contempt order, necessary or appropriate to carry out the provisions of the bankruptcy code." *Terrebonne Fuel & Lube*, 108 F.3d at 613.

"A district court has jurisdiction to impose a pre-filing injunction to deter vexatious, abusive, and harassing litigation." *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 187 (5th Cir. 2008) (citation omitted). Pro se litigants are not immune from being classified as vexatious litigants. *Carroll*, 850 F.3d at 815. In appropriate cases, pro se litigants may be subject to Rule 11 sanctions. *Burger v. Am. Mar. Officers Union*, Nos. 97-31099, 97-31100, 97-31158, & 97-31291, 1999 U.S. App. LEXIS 41284, at *8–9 (5th Cir. Jan. 27, 1999). "Sanctions may be appropriate when a pro se litigant has a history of submitting multiple frivolous claims." *Emrit v. Grammy Awards on CBS*, No. 23-cv-00044, 2024 U.S. Dist. LEXIS 35336, at *17 (S.D. Tex. Jan. 3, 2024) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195–97 (5th Cir. 1993)). "A pre-filing injunction must be tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Baum*, 513 F.3d at 187 (internal quotation marks and citation omitted). "'[T]he traditional standards for injunctive relief, *i.e.* irreparable injury and inadequate remedy at law, do not apply to the issuance of an injunction against a vexatious litigant.'" *Id.* at 189 (quoting *Martin-Trigona v. Lavien (In re Martin-Trigona)*, 737 F.2d 1254, 1262 (2d Cir. 1984)).

**b. Four-Factor Test for Pre-Filing Injunctions**

In determining whether to impose a pre-filing injunction, the Court must weigh four factors: "(1) the party's history of litigation, in particular whether he has filed vexatious, harassing,

or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions." *Baum*, 513 F.3d at 189 (internal quotation marks omitted) (quoting *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 818 (4th Cir. 2004)).

**2. Analysis**

**a. Dr. Kalkan Has a History of Vexatious, Harassing, and Duplicative Litigation**

The first *Baum* factor requires the Court to consider "the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits." *Baum*, 513 F.3d at 189 (internal quotation marks and citation omitted). Under the first factor, a litigant is vexatious when their conduct "is harassing or annoying, or evinces the intentional or reckless pursuit of a claim, defense or position that is or should be known . . . to be unwarranted in fact or law." *In re Osborne*, 375 B.R. 216, 224–25 (Bankr. M.D. La. 2007) (internal quotation marks omitted) (quoting *Cruz v. Savage*, 896 F.2d 626, 631–32 (1st Cir. 1990)). Repeatedly seeking to relitigate already-settled issues is evidence of vexatiousness. *Ky. Fried Chicken Corp. v. Diversified Packaging Corp.*, 552 F.2d 601, 603 (5th Cir. 1977).

Dr. Kalkan has engaged in extensive, duplicative litigation against Morgan Stanley centered on the same core issue: Morgan Stanley's foreclosure of the Properties. Dkt. No. 295, ¶ 12. Dr. Kalkan was named as a plaintiff in at least six state court lawsuits asserting wrongful foreclosure claims or seeking temporary restraining orders to enjoin Morgan Stanley's foreclosure proceedings. *Id.* These include four lawsuits filed in 2025 seeking temporary restraining orders (Harris County Cause Nos. 2025-07341, 2025-07363, 2025-07385, and 2025-07386) and two lawsuits asserting wrongful foreclosure claims (Harris County Cause Nos. 2026-03837 and 2026-

37121). *Id.* Dr. Kalkan also filed three lawsuits on behalf of the Debtors (Harris County Cause Nos. 2025-44995, 2025-44996, and 2025-44997) that were functionally duplicative of already-pending lawsuits (Harris County Cause Nos. 2025-07341, 2025-07363, 2025-07385, and 2025-07386). *Id.* Both sets of lawsuits alleged wrongful foreclosure and sought temporary restraining orders. *Id.* ¶ 13. The second set was filed after the temporary restraining orders in the first set expired—a clear effort to circumvent the judicial process and impose a second temporary injunction on the same issues in already-pending cases. *Id.*

Dr. Kalkan objects that several of the lawsuits listed in Morgan Stanley's table, *id.* ¶ 12, were filed by the Debtor entities, not by him personally, and therefore should not be counted against him. Dkt. No. 298, ¶ 2. This objection is unavailing. Dr. Kalkan was the individual principal of the Debtor entities. Dkt. No. 298, ¶ 4. He controlled these entities at the time the lawsuits were filed. Further, courts have recognized that an individual may be declared a vexatious litigant "(1) in his individual capacity, (2) as the owner, officer, or director of any entity, and (3) as trustee, trustor, or beneficiary of any type of trust." *Hayden v. W. Steel Corp. (In re Cashion Fam. Tr.)*, 676 B.R. 193, 213 (B.A.P. 9th Cir. 2025). Dr. Kalkan orchestrated both sets of duplicative lawsuits as the person in control of the plaintiff entities. He cannot now hide behind the legal separateness of entities he alone controlled to avoid consequences for vexatious litigation.

Dr. Kalkan's objection that one matter (Cause No. 2022-33737) was a lawsuit filed against him, rather than by him, is well-taken. Dkt. No. 298, ¶ 12. However, even excluding that single matter, Dr. Kalkan's litigation history remains extensive and duplicative. Dr. Kalkan filed the June 2026 Lawsuit on June 2, 2026, after this Court approved the settlement releasing the wrongful foreclosure claims. Dkt. No. 295, ¶¶ 15–18. In that lawsuit, Dr. Kalkan recycles the same wrongful foreclosure claim made by the Debtors in prior lawsuits. *Id.* ¶ 15. This filing occurred despite this

Court's permanent injunction against asserting the released claims. Dkt. No. 268. In addition to the lawsuits, Dr. Kalkan has recorded at least nine lis pendens against the Properties. Dkt. No. 295, ¶ 14. These lis pendens were recorded in three separate waves: three on August 21, 2025; three on January 29, 2026; and three on June 3, 2026. *Id.* Each wave of lis pendens was premised on the wrongful foreclosure claims. *Id.* ¶ 15. Even after voluntarily dismissing the January 2026 lawsuit underlying the three January lis pendens, Dr. Kalkan refused to release those lis pendens. *Id.* ¶ 21. Instead, he filed another set of lis pendens after filing the June 2026 Lawsuit. *Id.*

The pattern is clear: Dr. Kalkan has repeatedly filed duplicative lawsuits asserting the same wrongful foreclosure claims, recorded multiple waves of lis pendens to cloud title to the Properties, and continued this pattern even after this Court approved a settlement releasing those claims. Thus, the first *Baum* factor is satisfied.

**b. Dr. Kalkan Lacks a Good Faith Basis for His Litigation**

The second *Baum* factor examines "whether the party had a good faith basis for pursuing the litigation, or simply intended to harass." *Baum*, 513 F.3d at 189 (internal quotation marks and citation omitted). Bad faith is demonstrated where a party "repeated[ly] attempts to litigate issues that have been conclusively resolved against them" or where a party asserts claims without proper standing. *Carroll*, 850 F.3d at 815–16. A party engages in vexatious litigation when their filings evidence "bad faith, improper motive, or reckless disregard of the duty owed to the court." *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998) (citations omitted). Additionally, a party lacks a good faith basis to assert claims where their conduct is intended to delay. *Carroll*, 850 F.3d at 815–16.

**i. The Wrongful Foreclosure Claims Have Been Released**

The Court approved a settlement between Morgan Stanley and the Trustee that fully released and permanently enjoined creditors and parties-in-interest, including Dr. Kalkan, from pursuing wrongful foreclosure claims, including derivative claims, against Morgan Stanley with respect to foreclosure of the Properties. Dkt. No. 268, ¶¶ 4–5. Dr. Kalkan is aware of the settlement and release. Dkt. No. 298, ¶ 6. Nevertheless, he filed the June 2026 Lawsuit asserting yet another wrongful foreclosure claim. Dkt. No. 295, ¶¶ 15–18. The wrongful foreclosure claim belonged to the Debtors' estates and was released by the Settlement Order. Dkt. No. 268, ¶¶ 4–5.

Dr. Kalkan argues that "no court has ever rejected the underlying foreclosure claims on their merits." Dkt. No. 298, ¶ 2. This argument misses the point. The claims need not have been adjudicated on the merits to be "conclusively resolved" under *Carroll*. 850 F.3d at 815–16. The claims here were conclusively resolved by settlement and release—a binding, permanent resolution approved by this Court. Dr. Kalkan's repeated attempts to litigate wrongful foreclosure claims that have been released constitute bad faith under *Baum*.

**ii. Dr. Kalkan Lacks Standing to Assert the Wrongful Foreclosure Claims**

Texas law provides that "only the mortgagor or a party who is in privity with the mortgagor has standing to contest the validity of a foreclosure sale pursuant to the mortgagor's deed of trust." *Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 489 (Tex. 1988). The right to pursue damages for wrongful foreclosure is the right of the principal borrower, not the guarantor. *ITT Com. Fin. Corp. v. Riehn*, 796 S.W.2d 248, 255 (Tex. App.—Dallas 1990, no writ). Dr. Kalkan, in his capacity as a guarantor, does not have standing to pursue a wrongful foreclosure claim directly. The Properties were owned by the Debtor entities, not by Dr. Kalkan personally. Adv.

Dkt. No. 1,[3] at 18. Dr. Kalkan was not the direct borrower on any of the loans from Morgan Stanley related to the Properties; Dr. Kalkan was a guarantor. Dkt. No. 293, ¶ 6. Asserting claims without standing is evidence of bad faith under *Carroll*. 850 F.3d at 815–16.

Dr. Kalkan argues that whether his claims are barred by the settlement "is a contested question going to the merits of that claim" and maintains he has asserted "individual, non-derivative claims." Dkt. No. 298, ¶ 6. This argument is unavailing. Dr. Kalkan cites no authority supporting a guarantor's standing to bring a wrongful foreclosure claim seeking rescission of a foreclosure sale. Texas courts have long held that a guarantor lacks standing to directly pursue such claims. *See, e.g.*, *Goswami*, 751 S.W.2d at 489; *ITT Com. Fin.*, 796 S.W.2d at 255. Moreover, Dr. Kalkan has conceded that he "is prepared to amend his petition" if the Court determines he has pleaded an estate-owned claim. Dkt. No. 293, ¶ 13. This concession demonstrates that Dr. Kalkan understands his actions may violate the Settlement Order, and yet he chose to file a lawsuit first and seek permission later. This places the burden on this Court to order his compliance with the Court's prior rulings, rather than Dr. Kalkan seeking guidance before filing.

**iii. Dr. Kalkan's Conduct Is Intended to Harass and Delay**

A party lacks a good faith basis to assert claims where their conduct is "intended to harass and delay." *Carroll*, 850 F.3d at 815–16. Dr. Kalkan's repeated lis pendens recordings show an intent to harass and delay. He has recorded at least nine lis pendens against the Properties, each premised on the released wrongful foreclosure claims. Dkt. No. 295, ¶ 14. These lis pendens produce a cloud on title which harms the marketability of the encumbered property. After voluntarily dismissing the January 2026 lawsuit, Dr. Kalkan refused Morgan Stanley's demands

[3] References to docket entries in the June 2026 Lawsuit, Adv. No. 26-3238, take the format of Adv. Dkt. No. __.

to release the associated lis pendens. Dkt. No. 295, ¶ 21. Instead, he filed another lawsuit and another set of lis pendens. *Id.*

Dr. Kalkan has admitted to knowing that the lis pendens recorded in association with his now-dismissed January 2026 lawsuit are a "nullity" because there was no underlying case, Dkt. No. 293, ¶ 14, yet he has persistently refused to release those lis pendens. Dkt. No. 295, ¶ 24. The obvious purpose of this conduct is to delay the sale of the Properties by clouding title. Dr. Kalkan's obstruction has caused Morgan Stanley considerable harm, given that Morgan Stanley has been forced to incur the holding and operational costs on the Properties for nearly a year, in addition to the risks naturally associated with property ownership. Dkt. No. 295, ¶ 23. The repeated filing of meritless lawsuits and recording of lis pendens on the Properties in connection with those lawsuits is substantial evidence of Dr. Kalkan's bad faith. Thus, the second *Baum* factor is satisfied.

**c. Dr. Kalkan's Conduct Imposes a Substantial Burden on the Courts and Morgan Stanley**

The third *Baum* factor examines "the extent of the burden on the courts and other parties resulting from the party's filings." *Baum*, 513 F.3d at 189 (internal quotation marks and citation omitted). Under the third factor, courts consider "the extent of the burden on the courts and other parties resulting from the party's filings." *Id.* (internal quotation marks and citation omitted). Such conduct leads to "increased costs for the opposing party and multiplicity in litigation." *Ruth v. LVNV Funding, Inc. (In re Ruth)*, 473 B.R. 152, 166 (Bankr. S.D. Tex. 2012) (citation omitted).

Dr. Kalkan's filings have consumed substantial judicial resources across numerous Texas state courts and federal bankruptcy courts over the span of years. He has filed or caused to be filed at least nine lawsuits, each requiring a response from Morgan Stanley. His conduct has even reached the Harris County Clerk's Office, burdening that office with at least nine of Dr. Kalkan's

lis pendens recorded in Harris County. These filings culminated in forcing Morgan Stanley to file the Motion to Enforce.

Dr. Kalkan argues that the Settlement Order and pending Motion to Enforce already address his conduct, and therefore a pre-filing injunction is unnecessary. Dkt. No. 298, ¶ 20. This argument fails. The fact that Morgan Stanley has been forced to repeatedly return to this Court to enforce orders and seek relief from Dr. Kalkan's vexatious conduct is itself evidence of the burden his litigation imposes on both Morgan Stanley and the Court. Dr. Kalkan's lis pendens recordings impose a separate burden on Morgan Stanley by clouding title to the Properties and making them more difficult to sell. Due to this conduct, Morgan Stanley has been forced to incur the holding and operational costs on the Properties for nearly a year. Dkt. No. 295, ¶ 23. Thus, the third *Baum* factor is satisfied.

**d. Alternative Sanctions Are Inadequate**

The fourth *Baum* factor examines "the adequacy of alternative sanctions." *Baum*, 513 F.3d at 189 (internal quotation marks and citation omitted). Under the fourth factor, alternative sanctions, such as dismissal of a motion or monetary sanctions, are inadequate where the court does not believe that such sanctions will prevent a vexatious litigant from re-filing and continuing to pursue vexatious claims. *Carroll*, 850 F.3d at 814.

Dr. Kalkan's litigation history demonstrates that alternative sanctions will not deter him. He has filed multiple duplicative lawsuits even after temporary restraining orders expired. Dkt. No. 295, ¶ 12. He filed the June 2026 Lawsuit even after the Court approved the Settlement Order releasing the wrongful foreclosure claims. *Id.* ¶¶ 15–18. He refused to release lis pendens even after voluntarily dismissing the underlying lawsuit and being informed the lis pendens were nullities. *Id.* ¶ 21.

Dr. Kalkan argues that "adequate, less drastic remedies are available," including dismissal for lack of standing, enforcement of the existing injunction, and expunction of lis pendens. Dkt. No. 298, ¶ 23. But these remedies have already proven inadequate. Dismissing one lawsuit does not prevent Dr. Kalkan from filing another, and another—as his pattern of conduct demonstrates. Expunging one set of lis pendens does not prevent him from recording another set, and another—as he has done three times. Dkt. No. 295, ¶ 14. Ordinary remedies cannot address extraordinary vexatiousness. Dismissing consecutive, repetitive lawsuits and expunging unending lis pendens will not stop Dr. Kalkan from repeating his behavior. His litigation history proves he is exceedingly likely to file another lawsuit and record more lis pendens against the Properties. Thus, the fourth *Baum* factor is satisfied.

**3. Conclusion**

Under the *Baum* factors, Morgan Stanley has demonstrated that Dr. Kalkan has a history of duplicative, vexatious, and harassing litigation against Morgan Stanley, that Dr. Kalkan lacks a good faith basis for this litigation, that his conduct imposes a substantial burden on Morgan Stanley and the courts, and that alternative sanctions are inadequate to address his conduct. Accordingly, the Vexatious Litigant Motion is GRANTED. Dr. Kalkan shall be designated a vexatious litigant, and the Court will enter a pre-filing injunction against him, fully explained in the Order accompanying this Memorandum Opinion.

**B. Motion to Enforce**

Also pending before the Court is Morgan Stanley's Motion to Enforce. Dkt. No. 288. By the Motion to Enforce, Morgan Stanley seeks an order (1) finding that Dr. Kalkan's failure to release the lis pendens against the Properties is prohibited by the Settlement Order; (2) finding that the wrongful foreclosure claims asserted by Dr. Kalkan in the June 2026 Lawsuit are barred by the

Settlement Order; (3) expunging the lis pendens recorded in violation of the Settlement Order; and (4) assessing sanctions against Dr. Kalkan for willful violation of the Settlement Order through a finding of civil contempt, including awarding Morgan Stanley its costs and expenses incurred in prosecuting the Motion to Enforce. *Id.* ¶ 23.

As an initial matter, three out of four of Morgan Stanley's forms of relief requested in the Motion to Enforce were granted by this Court in its Order entered September 16, 2026, in the June 2026 Lawsuit. Adv. Dkt. No. 26. In that Order, the Court found that Dr. Kalkan violated the Settlement Order by bringing a wrongful foreclosure claim against Morgan Stanley and recording lis pendens on the Properties in connection with that claim. *Id.* at 5–7. Further, the Court directed Dr. Kalkan to release all lis pendens on the Properties by September 22, 2026. *Id.* at 7. At the hearing held September 15, 2026, in the June 2026 Lawsuit, counsel for Morgan Stanley stated on the record that the granting of that relief in the June 2026 Lawsuit mooted its relief sought through the Motion to Enforce. Adv. Dkt. No. 36, at 54:25–55:10. Accordingly, the Motion to Enforce is DENIED IN PART AS MOOT to the extent it seeks an order (1) finding that Dr. Kalkan's failure to release the lis pendens against the Properties is prohibited by the Settlement Order; (2) finding that the wrongful foreclosure claims asserted by Dr. Kalkan in the June 2026 Lawsuit are barred by the Settlement Order; and (3) expunging the lis pendens recorded in violation of the Settlement Order.

Morgan Stanley additionally requests sanctions against Dr. Kalkan for willful violation of the Settlement Order through a finding of civil contempt. Dkt. No. 288, ¶¶ 23, 44–46. Dr. Kalkan responds that he had an objectively reasonable basis for concluding that his conduct did not violate the Settlement Order and that he had a reasonable and good faith belief that the wrongful foreclosure claim was independent of the claims released by the Settlement Order. Dkt. No. 293,

¶ 16. Morgan Stanley replies that Dr. Kalkan advances an absurd reading of the Settlement Order and that there is no fair ground of doubt that his conduct violated the Settlement Order, and any belief that he acted in conformity with the Settlement Order is objectively unreasonable. Dkt. No. 323, ¶¶ 15–18.

The present record is incomplete on this issue and insufficient to render a decision on civil contempt. Thus, the Court will schedule a show cause hearing as to why Dr. Kalkan should not be held in civil contempt for willful violations of the Settlement Order. Accordingly, the Motion to Enforce is DENIED to the extent it seeks an order assessing sanctions against Dr. Kalkan for willful violations of the Settlement Order.

## V. Conclusion

All four *Baum* factors favor designating Dr. Kalkan a vexatious litigant and entering a pre-filing injunction against Dr. Kalkan. *Baum*, 513 F.3d at 189 (internal quotation marks and citation omitted). Dr. Kalkan has an extensive history of duplicative, vexatious litigation. He lacks a good faith basis for his claims, which have been released by settlement and which he lacks standing to assert. His conduct imposes substantial burdens on the courts and Morgan Stanley. Alternative sanctions have proven inadequate to deter his vexatious conduct. A pre-filing injunction is necessary and appropriate to protect the courts and Morgan Stanley from further vexatious litigation. The injunction will be narrowly tailored to preserve Dr. Kalkan's legitimate rights while preventing abuse. The Court's Order accomplishes this by requiring Dr. Kalkan to seek leave of Court before filing additional litigation related to Morgan Stanley's foreclosure on the Properties, while preserving his right to assert wrongful foreclosure defensively in connection with litigation regarding his guaranty liability. For the foregoing reasons, the Vexatious Litigant Motion is GRANTED. Dr. Kalkan is declared a vexatious litigant, and is hereby enjoined and prohibited

from (i) asserting any affirmative claim in a lawsuit or filing any new lawsuit asserting an affirmative claim against Morgan Stanley, or any subsidiary or assign thereof, for the wrongful foreclosure of the Properties and (ii) recording any lis pendens or other cloud on title covering the Properties or any portion thereof, without first filing a motion with this Court for leave to assert the affirmative claim or file a lawsuit asserting the affirmative claim, along with a proposed complaint or operative pleading, and obtaining an order granting leave from this Court to file such claim or lawsuit or record such lis pendens or cloud on title. Any filing of claims or recording of lis pendens or clouding of title to the Properties in contravention of this Order by Dr. Kalkan may result in imposition of monetary sanctions.

The Motion to Enforce largely seeks relief duplicative of relief already obtained by Morgan Stanley in the June 2026 Lawsuit. Accordingly, Morgan Stanley's relief requested in the Motion to Enforce with respect to the wrongful foreclosure claim and release of the lis pendens on the Properties is DENIED AS MOOT. Further, the record is insufficient at this stage for the Court to render a decision as to whether Dr. Kalkan is in civil contempt and assess sanctions against him for willful violation of the Settlement Order. Accordingly, Morgan Stanley's relief requested in the Motion to Enforce with respect to sanctions is DENIED, and the Court will set a show cause hearing as to why Dr. Kalkan should not be held in civil contempt and sanctioned for violation of the Settlement Order.

An Order consistent with the foregoing shall enter contemporaneously herewith.

**SIGNED Wednesday, November 4, 2026**

**Eduardo V. Rodriguez**
**Chief United States Bankruptcy Judge**